## Wilson's Estate.

*Receivers—Promissory notes—Unauthorized note—Liability of receiver—Individual liability.*

1. In the absence of fraud or concealment, or an intention or agreement to assume liability, the receiver of a corporation is not personally liable whenever he does an act in excess of his authority.

2. The principle which holds that one dealing with a receiver is bound to know the limits of his authority, and contracts with him at his peril, does not sanction the shifting of the liability to the receiver, personally so long as he acts fairly and in good faith and conceals or misrepresents nothing.

3. The receiver of a corporation negotiated a loan from a bank and gave a promissory note signed with the name of the corporation, and his own name as receiver; he was unauthorized to borrow money or make notes.    After the death of the receiver, his administratrix filed his account, as receiver, which was approved by the court, and in which she charged his estate with the money received from the bank, and took credit for payments made on account of the corporation.    At the audit of the estate of the decedent receiver, the bank presented its claim for the amount of the promissory note; the Orphans' Court allowed the claim on the ground that as the receiver was not authorized by the court to make the note, so as to bind the estate of the insolvent corporation, he bound himself.    *Held,* error, and the judgment was reversed.

Argued Jan. 11, 1916.    Appeals, Nos. 329 and 330, Jan. T., 1915, by Daisy E. Wilson and the Commonwealth Title Insurance and Trust Company, Guardian of Robert H. Wilson, a minor, from decree of O. C. Philadelphia Co., April T., 1914, No. 465, dismissing excep-

tions to adjudication, in Estate of Charles E. Wilson, deceased. Before BROWN, C. J., MESTREZAT, STEWART, FRAZER and WALLING, JJ. Reversed.

Exceptions to adjudication. Before LAMORELLE, J.

The opinion of the Supreme Court states the facts.

The Orphans' Court allowed the claim of the Quaker City National Bank, upon a promissory note signed "Continental Telephone and Telegraph Co., Charles E. Wilson, Receiver," in the sum of $12,735.54. Daisy E. Wilson and the Commonwealth Title Insurance and Trust Company, Guardian of Robert H. Wilson, a minor, appealed.

*Error assigned* was the decree of the court.

*John G. Johnson,* for appellants.

*Thos. Raeburn White,* with him *Chas. S. Wesley* and *Howard W. Page,* for appellee.

OPINION BY MR. JUSTICE FRAZER, February 14, 1916:

This appeal is by the widow and minor child of Charles E. Wilson, deceased, from the decree of the Orphans' Court of Philadelphia County, allowing the claim of the Quaker City National Bank against decedent's estate for $12,000, on a note for that amount, dated January 18, 1911, and signed—"Continental Telephone & Telegraph Co., C. E. Wilson, Receiver."

On December 1, 1911, Wilson procured a personal loan of $8,005, from the Quaker City National Bank of Philadelphia. This indebtedness he paid off December 7, by negotiating a new loan of the same amount for the Continental Telephone & Telegraph Company, of which company, on January 10, 1911, he was appointed receiver. About three weeks later a domiciliary receiver of the company was also appointed in New Jersey, the home of the corporation. On January 18, 1911, Wilson,

acting as receiver, negotiated a new loan of $12,000 from
the Quaker City Bank, giving it the note which forms
the basis of the claim against his estate.   With this loan
Wilson paid the note of December 7, 1910, after charg-
ing himself with the receipt of the $12,000 in his ca-
pacity as receiver.   The proceeds of the loan, over and
above the $8,005, were used for the benefit of the insol-
vent company.   The bank knew Wilson was acting for
the company's benefit, in his capacity as receiver.   Wil-
son was without authority to borrow money, or make
the note as receiver, and the bank was aware he was act-
ing in that capacity, but made no inquiry as to his au-
thority.

The New Jersey court subsequently sold the property
of the Continental Telephone & Telegraph Company, in-
cluding the balance of unexpended funds in the hands of
Wilson.   The latter never filed an account, but, after his
death, which occurred March 27, 1913, his administratrix
filed an account of the receivership, showing a nominal
sum on hand; whereupon the court directed all books,
paper, etc., to be turned over to the domiciliary receiver,
upon his paying stated sums as compensation for the re-
ceiver and his counsel.   There having been no funds in
the jurisdiction for payment of creditors, the Quaker City
Bank presented its claim for $12,000 on the note against
Wilson's estate, on the ground that he was personally
liable.

From the foregoing statement of facts it appears
the estate of the corporation benefited by the proceeds
of the loan, and no personal benefit accrued to the re-
ceiver.   There are no allegations of fraud or improper
conduct on his part in his dealing either with the funds of
the company, or with the payee of the note.   The latter
acted with knowledge of all the facts, and was aware that
Wilson was negotiating the loan in his official capacity,
and without authority from the court.   There was no
concealment or misrepresentation of the facts alleged,
and the officers of the bank, in dealing with the receiver,

were bound to take notice of, and recognize, the limits of his authority, and contracted with him at their peril: Chicago Deposit Vault Co. v. McNulta, 153 U. S. 554; Lehigh Coal & Navigation Co. v. Central R. R. of N. J., 35 N. J. Eq. 426; Stone v. St. Louis Union Trust Co., 183 Mo. App. 261; Hendrie & Bolthoff Mfg. Co. v. Parry, 37 Col. 359. The case of Lehigh Coal & Navigation Company v. Central R. R. of N. J. cited above is a good illustration of the application of this rule. In that case a petition was presented to compel a receiver to accept and pay for materials ordered by him and which he refused to receive. In holding the contract of the receiver was not binding on the trust the court said—(p. 430) "The petitioners, in accepting orders, acted with their eyes wide open. They knew what they were doing. They were dealing with an officer possessing very limited powers, and who was constantly subject to the orders of the power which created him.......They must also be assumed to have known that the receiver could make no contract effectual against the trust which was not first authorized or subsequently ratified by the chancellor. They were at liberty to decline the contract until such authority was obtained, or to require the receiver to bind himself in his individual capacity. If they chose to act without adopting such precautions as were necessary to insure them against loss, they must be understood as having deliberately assumed whatever risk attended their venture, and if it has turned out that the hazards were greater than they estimated, or that the course of events has been less propitious for them than they hoped, their miscalculation or misfortunes are not a grievance but rather the result of their own rashness."

In the present case there was no agreement that the receiver was to be bound in his individual capacity, as was suggested by the court in the above case, as a possible precaution. On the contrary, the attempt is to hold the receiver personally liable after the claimant was disappointed in not receiving payment out of the corpora-

tion's estate. In absence of fraud, or concealment, or an intention or agreement to assume liability, we are unable to agree with the contention that the receiver is personally liable whenever he does an act in excess of his authority. The principle which holds that one dealing with a receiver is bound to know the limits of his authority, and contracts with him at his peril, does not sanction a shifting of the liability to the receiver, so long as he acts fairly and in good faith, and conceals or misrepresents nothing. The logical result of the principle referred to is the opposite conclusion—that the loss must be borne by the person upon whom it falls, unless the parties expressly, or by the form of the instrument, contracted for personal liability. In the case of Peoria Steam Marble Works v. Hickey, 110 Ia. 276, relied upon by appellee, the note, on which suit was brought against the receiver personally, was signed "James Hickey, Receiver," which form of signature, it was assumed in the opinion, made it primarily a personal obligation of the receiver. Defendant pleaded a mutual mistake, averring plaintiffs were fully aware the writing was intended to be executed in a representative capacity and asked to have it reformed accordingly. The principal objection of the majority of the court to reforming the instrument was, that the receiver intended to hold someone by the contract, and if reformed there was no person to hold, because he had no authority to give the obligation. In the present case the note does not in form import a personal liability. The bank dealt with Wilson as receiver, the note was signed in the name of the company, and there is no question as to what the parties intended. Notwithstanding the want of authority from the court on the part of Wilson, the bank chose to deal with him in his official capacity, and it is now too late to ask that his estate be made liable.

Even though the receiver acted without authority from the court in the first instance, his acts were subsequently ratified and approved by the court when his

account was filed by his administratrix, in which she charged him with the $12,000, and took credit for disbursements made out of that fund. The right of the court to approve and sanction that which it might have originally authorized, cannot be disputed: High on Receivers, 4th ed., sec. 186; Chicago Deposit Vault Co. v. McNulta, 153 U. S. 554; Lehigh Coal & Navigation Co. v. Central R. R. of N. J., 35 N. J. Eq. 426. For all practical purposes, therefore, the parties stand in the same position they would have occupied if the giving of the note had been previously authorized by the court, and as there was neither fraud nor deception practiced on the bank, it cannot now complain when it finds the powers of the receiver were exactly what both parties apparently supposed them to be when the note was made. The court having charge of his affairs, approved the expenditures, and we must, therefore, assume they were for a proper purpose. Had application been made and necessity shown, the loan would, in all probability, have been duly authorized, and the excess over the original debt of $8,005 made a preferred claim. The claimant, for some unaccountable reason, chose to advance more money, and take its chances with other creditors. It is bound by its choice, and cannot now ask to be relieved from the effect of its mistake.

Decree reversed.