Charles E. PAPPAS, M.D., Appellant

v.

UNUM LIFE INSURANCE COMPANY
OF AMERICA, Appellee.

Superior Court of Pennsylvania.

Argued April 22, 2004.
Filed Aug. 9, 2004.

Steven Kapustin, Blue Bell, for appellant.

Edward T. Henefer, Reading, for appellee.

Before: JOYCE, BOWES, and JOHNSON, JJ.

JOHNSON, J.

¶ 1 Charles E. Pappas, M.D., appeals the trial court's order granting summary judgment for defendant UNUM Life Insurance Company of America on Pappas's claim for cost of living adjustments (COLA) on disability benefits he collects under a policy of insurance UNUM issued. Pappas asserts that genuine issues of material fact exist concerning the meaning of the operative provisions of UNUM's insurance contract and that the court should have compelled additional discovery to resolve them. The court found UNUM's contract clear and concluded that Pappas did not qualify for COLA's under its provisions. We concur in the court's judgment and, accordingly, we affirm the order granting summary judgment.

¶ 2 Pappas is a board-certified plastic surgeon who formerly practiced in Chestnut Hill, Montgomery County. In 1980 and 1988, respectively, Pappas purchased from UNUM two policies of disability insurance numbered LAD044461 and

LAD049933, each of which incorporated a Cost of Living Adjustment Rider and an Exclusion Rider. While the COLA Rider provided generally for annual increases in the Maximum Disability Benefit under the policies, the Exclusion Rider declared that COLA's could not be paid to claimants whose disabilities arose from certain enumerated causes. Those causes included carpal tunnel syndrome, radiculopathy, and disease or disorder of the cervical spine except fractures, burns or lacerations.

¶ 3 In 1989, Pappas suffered injury in an auto accident, after which he was afflicted with symptoms of radiculopathy and carpal tunnel syndrome. Although Pappas continued to work for several years thereafter, his symptoms eventually became debilitating and, in 1995, he applied for and received disability benefits under UNUM's policies. UNUM refused, however, to pay any benefit under the COLA Rider, asserting that because Pappas's injuries were of the type specified in the Exclusion Rider, Pappas was ineligible to receive COLA benefits. Consequently, in 1997, Pappas commenced a prior action, asserting that UNUM had denied his claim in bad faith. UNUM counterclaimed for declaratory judgment, contending that the Exclusion Rider of the policies invalidated Pappas's claim under the COLA Rider. The United States District Court for the Eastern District of Pennsylvania determined that Pappas's injuries fell squarely within the purview of the Exclusion Rider and that Pappas was not, therefore, entitled to payment of any COLA benefit. *Pappas v. UNUM Life Ins. Co.,* 2000 WL 1137730 (E.D.Pa. Aug.10, 2000) (*Pappas I* ). In addition, the court ordered Pappas to remit to UNUM over $110,000 in COLA benefits the company had paid in error. The Third Circuit Court of Appeals affirmed, 261 F.3d 492 (3d Cir.2001) (Table), and the United States Supreme Court de-

nied certiorari, 534 U.S. 1129, 122 S.Ct. 1067, 151 L.Ed.2d 970.

¶ 4 In January 1999, Pappas suffered a second auto accident and sustained new injuries diagnosed as lumbar disc herniation. On account of those injuries, Pappas filed a new claim, contending that his new injuries were not addressed by the policies' Exclusion Riders and that, consequently, he is entitled to COLA's on his existing benefits. UNUM refused Pappas's claim, asserting that because Pappas was already disabled and had not returned to work following his declaration of the prior disability, he could not qualify for additional benefits under the provisions of his policies. Consequently, Pappas commenced this action, and UNUM again filed a Counterclaim for Declaratory Judgment. On May 16, 2003, UNUM filed the Motion for Summary Judgment that underlies this appeal, contending that under the clear terms of the policies, Pappas's claims were excluded. Pappas responded with a Motion to Compel Discovery, asserting that the language of the policies gave rise to numerous questions of fact concerning the parties' intentions that could be resolved only by reference to extraneous evidence, including UNUM's internal memoranda reflecting on the meaning of certain terms in the policy.

¶ 5 Following oral argument, the trial court, the Honorable William R. Carpenter, concluded that the terms of UNUM's policies were not ambiguous and clearly excluded payment of claims on the grounds Pappas asserted. Accordingly, the court denied Pappas's Motion to Compel Discovery and granted summary judgment in favor of UNUM. Pappas then filed this appeal, raising the following questions for our review:

1. Whether the trial court erred as a matter of law or committed an abuse

of discretion in granting Summary Judgment despite the existence of an ambiguity in an insurance contract which was the subject of the instant action?

2. Whether the trial court erred as a matter of law or committed an abuse of discretion in granting summary judgment in light of the genuine issues and material facts that were outstanding related to Plaintiff's physical condition?

3. Whether the trial court erred as a matter of law or committed an abuse of discretion in denying Plaintiff's request for discovery, said discovery which was necessary to defend against the Motion for Summary Judgment?

4. Whether the trial court erred as a matter of law or committed an abuse of discretion in granting summary judgment on the Defendant's counterclaim requesting the entry of a declaratory judgment?

Brief for Appellant at 3. Upon review, we conclude that Pappas's four questions do not raise discrete legal issues. Rather, they merely present alternative arguments that the trial court erred in granting summary judgment on his own claim for COLA benefits under UNUM's policy of disability insurance and UNUM's claim for declaratory judgment. Because the resolution of these questions depends solely on the proper construction of the policy, we shall address them together with reference to the policy language.

¶ 6 "Our scope of review of an order granting summary judgment is plenary." *Charles D. Stein Revocable Trust v. Gen. Felt Indus.*, 749 A.2d 978, 980 (Pa.Super.2000). "Accordingly, we apply the same standard as the trial court, reviewing all of the evidence of record to determine whether there exists a genuine issue of material fact." *Id.* "[A] proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense[.]" *Basile v. H & R Block*, 777 A.2d 95, 100 (Pa.Super.2001). Thus, a defendant may establish a right to summary judgment by demonstrating the plaintiff's inability to show an element essential to his claim. *See id.* at 100. If the plaintiff fails to contravene the defendant's claim with evidence raising a factual dispute as to that element, the defendant is entitled to entry of judgment as a matter of law. *See Glenbrook Leasing Co. v. Beausang*, 839 A.2d 437, 440–41 (Pa.Super.2003). "Summary judgment may be entered prior to the completion of discovery in matters where additional discovery would not aid in the establishment of any material fact." *Gatling v. Eaton Corp.*, 807 A.2d 283, 286 (Pa.Super.2002) (citing *Manzetti v. Mercy Hosp. of Pittsburgh*, 565 Pa. 471, 776 A.2d 938, 951 (2001)).

¶ 7 In this case, Pappas challenges summary judgment based both on the terms of the COLA Rider, which he contends are ambiguous, Brief for Appellant at 9–10, and on the trial court's refusal to allow further discovery which, ostensibly, would have resolved the asserted ambiguity, Brief for Appellant at 18–19. The trial court found Pappas's argument "strained and illogical," hobbled by its excessive reliance on the Riders' limited language, and its failure to interpret the Riders as part of an integrated contract of insurance. Trial Court Opinion, 12/30/03, at 8–9. The court reasoned that "[p]ursuant to the integrated COLA Rider, an insured must satisfy both the requirements of the policies and those set forth in the COLA Rider. Accordingly, [Pappas] must first be eligible for 'disability benefits' for his

1999 lumbar disc injury, and then [Pappas] must fulfill the COLA requirements." Trial Court Opinion, 12/30/03, at 6. After exploring the definitions of "Disability Benefit" and related terms under the policies, the court concluded that the language of the policies was clear and would not allow payment of COLA's unless Pappas could establish that his lumbar injury, rather than his prior cervical disc injury, was the reason for his ongoing disability. Trial Court Opinion, 12/30/03, at 7–8. The court determined further that because Pappas had never returned to the practice of plastic surgery (or any other employment) after his disability commenced in 1995, he could not be deemed disabled for some new cause and remained subject to the original exclusion on payment of COLA's for cervical injuries. Trial Court Opinion, 12/30/03, at 7.

¶ 8 Upon review of Pappas's policies and the trial court's Rule 1925(b) Opinion, we find Pappas's claims without merit. As our holdings make clear, "an insurer may draft a policy with explicit exclusions and the Court will uphold the plain meaning of [such] exclusions since a policyholder cannot reasonably expect unlimited coverage in the face of an explicit, unambiguous limitation." *Young v. Equitable Life Assur. Soc.*, 350 Pa.Super. 247, 504 A.2d 339, 342 (1986). Accordingly, the issue of whether a particular loss is covered by a policy of insurance or barred by an exclusion is properly determined by reference to the policy's language. *See Lebanon Coach Co. v. Carolina Cas. Ins. Co.*, 450 Pa.Super. 1, 675 A.2d 279, 283 (1996). Where the language is unambiguous, its plain meaning governs the reach of the policy's provisions and the court may determine the coverage of the policy as a matter of law. *See Nationwide Mut. Ins. Co. v. Nixon*, 453 Pa.Super. 70, 682 A.2d 1310, 1313 (1996); *Butterfield v. Giuntoli*,

448 Pa.Super. 1, 670 A.2d 646, 652 (1995). Although the court may discern the contract's general purpose in view of surrounding circumstances, *see Stein Revocable Trust*, 749 A.2d at 980, it may not receive extraneous evidence of the parties' intent unless the language of the policy is ambiguous. *See Lebanon Coach Co.*, 675 A.2d at 283.

¶ 9 A contract may be deemed ambiguous "[i]f, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning." *Young*, 504 A.2d at 341. Policy language is not rendered ambiguous "if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends[.]" *Id.* Mere disagreement between the parties on the meaning of language or the proper construction of contract terms does not constitute ambiguity. *See id.* Such disagreement will not impede disposition of the parties' claims on summary judgment. *See Lebanon Coach Co.*, 675 A.2d at 283.

¶ 10 In this case, Pappas disputes the trial court's construction of contract terms appearing in UNUM's respective disability policies, contending that the Riders ascribe meaning to terms at odds with those contained in the body of the insurance policy, thereby creating ambiguity. Brief for Appellant at 9–11. Perusal of the terms at issue reveals the error of Pappas's assertions. We begin with the operative provision of the COLA Rider.

## COST OF LIVING ADJUSTMENT

On each anniversary of the first day of a period of disability which began while

this rider was in effect, we will increase the Maximum Disability Benefit by multiplying the Maximum Disability Benefit in effect on the first day of the disability by the CPI–U [Consumer Price Index for All Urban Consumers] Factor to determine the new Maximum Disability Benefit if:

1. the Insured is disabled;
2. the disability is caused by an injury that occurs, or by a sickness that begins, after this rider became effective; and
3. the policy anniversary when his age is 65 has not occurred.

UNUM Rider CLC86 at 1. Pappas argues, rather summarily, that "disability" as used in this provision is subject to materially different definitions, one appearing in the Rider and the other in the definitions section of the policy. In the Rider, "disability" and "disabled" are defined as "the period while the Insured is satisfying the Elimination Period, or while benefits are payable." UNUM Rider CLC86 at 1. In the body of the policy

"Disability" and "disabled" mean the period while the insured is satisfying the Elimination Period, or while the Disability Benefit, the Recovery Benefit or the Loss of Use Benefit is payable. However for purposes of the Successive Disabilities provision, the period while the Insured is receiving the Recovery Benefit is excluded from this definition.

UNUM Policy LAD044461 at 6.

¶ 11 Viewing these two definitions together in the context of other language in the policy and the Rider, we find Pappas's suggestion of ambiguity strained. First, we note that the definition of disability appearing in the rider is restricted to the Rider by express language and may not be imported to the body of the policy. The Rider states specifically that the definitions it provides are "[w]hen used in this

rider only." UNUM Rider CLC86 at 1. Implicit in this limitation is the parties' recognition that the definitions are to be employed for two very different purposes; one definition defines the term for purposes of one type of claim while the second defines it for another. The language in the Rider applies to claims for COLA's on existing disability benefits while the language in the policy describes conditions to be met for new benefits. Hence, we fail to discern how their construction together as part of an integrated policy of insurance yields any ambiguity. In the absence of ambiguity, Pappas's call for additional discovery concerning the meaning of policy terms is wholly without merit. *See Lebanon Coach Co.*, 675 A.2d at 283 (directing that trial court may not receive extraneous evidence of the parties' intent unless the language of the policy is ambiguous).

¶ 12 In the alternative, Pappas argues that he has satisfied the three prerequisites required by the COLA Rider and therefore should be awarded a COLA benefit. This argument is misguided, as it fails to recognize the COLA Rider as an addendum to a comprehensive policy of insurance, subject to other policy provisions. Although the "Cost of Living Adjustment" provision of the Rider, viewed in isolation, appears to allow claimants relatively unencumbered access to COLA benefits for disabilities recognized after the Rider's effective date, its terms were specifically modified by the Exclusion Rider of October 14, 1991, eliminating any entitlement to COLA's for the injury Pappas suffered. UNUM Rider 997–85 at 1 ("[T]his Exclusion Rider amends: Form # CLC 86"). The Exclusion Rider imposes the following specific limitation:

[N]o benefit of any kind or amount is payable to anyone for any loss, impairment or disability due to, contributed to by, or resulting from CARPAL TUN-

NEL SYNDROME; RADICULOPATHY OR INJURY, DISEASE OR DISORDER OF THE CERVICAL SPINAL REGION EXCEPT FRACTURES, BURNS OR LACERATIONS[.]

UNUM Rider 997–85 at 1. As recognized by the United States District Court addressing UNUM's counterclaim for declaratory judgment in prior litigation discussed *supra*, this provision disqualifies any claim for COLA's that Pappas might make arising from the cervical injuries and carpal tunnel syndrome that rendered him disabled in 1995. *See Pappas I*, 2000 WL 1137730 \*4.

¶ 13 We find the District Court's ruling preclusive on this issue under the doctrine of collateral estoppel. *See Balent v. City of Wilkes–Barre*, 542 Pa. 555, 669 A.2d 309, 313 (1995) (recognizing that re-litigation of issue is precluded by determination in prior litigation where identical issue was necessary to disposition of claim on the merits, party against whom claim is asserted in current action was party or in privity with a party in prior action, and that party had full and fair opportunity to litigate issue in prior action); *cf. Atiyeh v. Bear*, 456 Pa.Super. 548, 690 A.2d 1245, 1249 (1997) (recognizing that disposition of claim in federal court precludes re-litigation in state court). Accordingly, we need only determine whether the trial court erred in its conclusion that to qualify for COLA increases on the basis of his 1999 lumbar disc injury, Pappas must first be eligible for 'disability benefits' on the basis of that injury.

¶ 14 We conclude that the trial court did not err. Significantly, Pappas continues to receive his disability benefits from UNUM on the basis of his pre–1995 cervical disc injury. Although he now seeks an award of COLA's based on a subsequent injury, he fails to identify any provision of the policy that allows him to collect COLA's by reason of an injury for which he has not been deemed disabled under the policy. *See Butterfield*, 670 A.2d at 651–52 ("[T]he insured must show that the policy covers its claim, and then the burden shifts to the insurer to establish an exclusion."). Thus, he appears to seek COLA's on a disability benefit he does not receive and for which he has not qualified. Pappas finds support for his claim only by reference to the truncated language of the COLA Rider itself, without consideration of the remainder of the policy, arguing that because he is currently disabled (regardless of the underlying cause), he must be entitled to COLA benefits. Brief for Appellant at 11.

¶ 15 Unfortunately, this argument seeks to circumvent the prior decision of the District Court by substituting an injury for which Pappas has not been deemed disabled under the policy for one that is excluded from payment of COLA benefits by the terms of the policy. Pappas seeks justification for this position in the assertion that the language of a rider "must control the policy in so far as it enlarges, modifies or restricts its terms[.]" Brief for Appellant at 13. He fails, however, to reconcile this pronouncement with the language of the Rider itself, which provides: "This rider is part of the policy to which it is attached. The rights provided by this rider are subject to the terms and conditions of this rider and this [sic] rest of this policy." UNUM Rider CLC86 at 1. He fails, similarly, to recognize that every contract must be construed in its entirety to give effect to all of its terms, "taking into consideration the surrounding circumstances, the situation of the parties when the contract was made and the objects they apparently had in view and the nature of the subject matter." *Huegel v. Mifflin Const. Co., Inc.*, 796 A.2d 350, 354 (Pa.Super.2002).

¶ 16 Having considered the parties' contract in light of this standard and the language of the COLA Rider itself, we conclude that a claimant may receive a COLA only as a percentage of the benefit for his current disability under the policy. No cost of living adjustment is paid in isolation, but by definition, must be paid in relation to some underlying payment. The District Court determined, the trial court recognized, and we affirm that Pappas may not receive a COLA on the basis of disability benefits payable for his cervical disc injury. Accordingly, he may receive COLA's based only on some other injury and therefore must qualify for disability benefits for that injury. We agree with the trial court that the integration provision of the COLA Rider makes this conclusion imperative. As that provision recognizes, "[t]he rights provided by [the] rider are subject to the terms and conditions of . . . this [sic] rest of this policy." UNUM Rider CLC86 at 1. Thus, to be eligible for a COLA, Pappas must first establish his eligibility for the underlying disability benefit in accordance with the following provision.

> **Disability Benefit.** We will pay the monthly Benefit Amount in any month after the Insured has satisfied the Elimination Period that:
>
> 1. the Insured is totally disabled or experiences at least a 20% loss of net income in his regular occupation as a result of a present injury or sickness;
>
> 2. the injury or sickness which causes the loss of net income is the one which caused him to satisfy the Elimination Period;
>
>     \* \* \* \*
>
> After disability ceases, resumption of the Disability Benefit is subject to the preceding requirements and those stated in the Successive Disabilities provision.

UNUM Policy LAD044461 at 7.

¶ 17 Further exploration of the operative terms of this "Disability Benefit" provision reveals that Pappas cannot qualify on the basis of the lumbar disc injury he now asserts. Critical in this regard are two definitions: "regular occupation" and "elimination period." The policy defines "regular occupation" as "the insured's occupation at the time the Elimination Period begins. If the Insured engages primarily in a professionally recognized specialty at that time, his occupation is that specialty." UNUM Policy LAD044461 at 7. The policy defines "Elimination Period" as "the number of days stated on page 3 preceding [60 days] the date benefits become payable (other than the Loss of Use Benefit), during which injury or sickness impairs the Insured. The Elimination Period begins on the first day that the Insured is impaired." UNUM Policy LAD044461 at 6. Construing these definitions together, the trial court concluded that "[Pappas] would be eligible for disability benefits regarding his lumbar disc injury only if at the time of the injury [Pappas] was practicing as a plastic surgeon; the lumbar disc injury is the very injury that prevented [Pappas] from continuing to practice as a plastic surgeon; and finally, that the lumbar disc injury is that which triggered the beginning of the sixty (60) day Elimination Period." Trial Court Opinion, 12/30/03, at 7. We find the trial court's interpretation entirely consistent with the applicable terms and absolutely correct.

¶ 18 Given the foregoing restrictions, we find no substantiation in the current record for any claim that Pappas might make for disability benefits, and by extension COLA benefits, arising from his lumbar injury. The record establishes, without contradiction, that Pappas has been com-

pletely disabled since 1995 as a consequence of his cervical disc injury and has collected disability benefits under the policy continuously since then. He has not returned to practice as a plastic surgeon for any length of time in the interim, nor does he assert that he engaged in another occupation. Accordingly, his 1999 lumbar disc injury cannot be deemed the cause of his current disability. Regardless of whether, as Pappas claims, the injury *would have* disabled him from his "regular occupation" had he been so engaged, the fact remains that he was not so engaged on the date of the injury. Thus, we need not dispute Pappas's assertion that "the lumbar disc injuries in and of themselves have disabled him." Brief for Appellant at 16. Regardless of the severity of the lumbar disc injury, the fact remains that Pappas was not employed in his "regular occupation" on the date of the injury/resulting impairment. Moreover, because the disability caused by the cervical disc injury has not ceased, Pappas clearly is not eligible to claim benefits under the Successive Disabilities provision. *See* UNUM Policy LAD044461 at 7 ("After disability ceases, resumption of the Disability Benefit is subject to the preceding requirements and those stated in the Successive Disabilities provision.").

¶ 19 In view of the limitations imposed by the policy provisions on Pappas's ability to qualify for disability benefits, we concur in the trial court's determination that, on the current record, he cannot be deemed disabled by reason of his 1999 lumbar disc injury. We agree as well that because the integration clause of the COLA Rider subjects claimants seeking COLA benefits to the provision of the standard policy, Pappas cannot qualify for COLA's by reason of the lumbar disc injury. Since he is precluded by the judgment in *Pappas I* from obtaining COLA's on his existing disability benefits, the trial court did not err in granting summary judgment on his claim in favor of UNUM. Similarly, the court did not err in granting declaratory judgment in favor of UNUM. *See Bottomer v. Progressive Cas. Ins. Co.*, 816 A.2d 1172, 1175 (Pa.Super.2003) (recognizing declaratory judgment as appropriate means for determination of right and duties of parties to an insurance contract). Accordingly, we affirm the trial court's order granting summary judgment.

¶ 20 Order **AFFIRMED**.