J-A08018-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SUSAN L. KATZ | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JAMES R. KATZ | |
| Appellant | No. 1014 WDA 2013 |

Appeal from the Order of May 15, 2013
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD 03-000652-008

BEFORE: SHOGAN, OLSON and WECHT, JJ.:

MEMORANDUM BY OLSON, J.: **FILED SEPTEMBER 03, 2014**

Appellant, James R. Katz, appeals from an order entered on May 15, 2013 in the Court of Common Pleas of Allegheny County that granted summary judgment in favor of Kirk B. Burkley, Esq. and the Bernstein Law Firm, P.C. (collectively "Receiver"). After careful review, we affirm.[1]

_____

[1] The Receiver filed a motion to quash this appeal pursuant to Pa.R.A.P. 1975(5) and (7). In support of the motion, the Receiver alleges that Appellant failed to file and serve a designation of the contents of his reproduced record, improperly included in the reproduced record excerpts of his deposition transcript that were not found in the certified record on appeal, and failed to include in the reproduced record the Receiver's summary judgment motion, brief in support, reply brief and related exhibits. Receiver's Motion to Quash and/or Strike, 11/20/13, at 3. Since we have denied Appellant's request for relief on appeal, we deny the Receiver's motion to quash as moot.

We summarize the relevant procedural and factual history as follows. Susan L. Katz ("Wife") filed a complaint in divorce against Appellant on November 19, 2003. Both sides acknowledge that contentious litigation ensued in the following years. Appellant is the sole proprietor or shareholder in several entities engaged in the business of acquiring and developing real property and managing rental properties in the Pittsburgh area. These real estate assets constitute a significant portion of the marital estate in this case. In December 2009, Wife served notice that she intended to present a motion to the court seeking appointment of a receiver. Wife's motion alleged that Appellant inappropriately used certain funds from his businesses.[2] Appellant denied Wife's allegations in his answer to her motion.

Following oral argument on January 27, 2010, the trial court granted Wife's motion and appointed the Receiver to manage the affairs of Appellant's real estate businesses and to protect and preserve the marital estate prior to equitable distribution. Trial Court Order, 1/27/10; Trial Court Opinion, 9/4/13, at 1. In its order, the trial court gave the Receiver

_____

[2] Specifically, Wife alleged that: (1) Appellant received significant payments from one of his real estate entities; (2) Appellant misrepresented personal debts as business obligations for one of his real estate entities; (3) Appellant withdrew substantial funds that had been held in escrow to secure performance of certain road work for a real estate development project; and, (4) there was a great need to avoid mismanagement of the marital assets because of a substantial claim Wife's father filed against the marital estate. Motion for Appointment of a Receiver, 2/17/10, at ¶¶ 8-29.

exclusive control over Appellant's business entities, including the specific authority to engage in a broad range of activities central to the oversight and operation of a real estate enterprise. *See* Trial Court Order, 1/27/10, ¶¶ 1-7. The appointment order provided that the Receiver was entitled to compensation as enumerated in an attached schedule.[3] The court's order also stated that "the Receiver [shall not] be liable to anyone for any actions taken or omitted by them except upon a finding by th[e trial c]ourt that they acted or failed to act as a result of malfeasance, bad faith, gross negligence or reckless disregard for their duties[.]" *Id.* at 2 (unpaginated).

Appellant, on two occasions, filed motions before the trial court to remove the Receiver. The trial court denied those motions by orders entered on June 16, 2010 and December 13, 2010. The trial court terminated the receivership on November 7, 2011, following the completion of the parties' equitable distribution trial. On December 14, 2011, Appellant filed claims against the Receiver, alleging malfeasance, bad faith, and gross negligence in the Receiver's performance of his duties. On November 5, 2012, the Receiver moved for summary judgment.[4] The trial court granted the Receiver's motion on May 15, 2013. This appeal followed.

_____

[3] The trial court did not attach a compensation schedule to its appointment order.

[4] The record reflects that the Receiver served its motion on Appellant's counsel on November 5, 2012. However, the Receiver filed its motion with the court on December 6, 2012.

In his brief, Appellant raises the following claims for our review:

Does a [c]ourt of [c]ommon [p]leas abuse its discretion and commit an error of law in granting a Receiver's [m]otion for [s]ummary [j]udgment in a [c]laim [a]gainst the Receiver where a) the record is replete with material factual disputes regarding the conduct of the Receivership; b) the same court recently held a hearing on a contempt petition against the Receivership that raises material factual questions regarding the conduct of the Receivership; and c) the time for discovery set by order of the court in the [c]laim against the Receiver had not expired?

Does a [c]ourt of [c]ommon [p]leas abuse its discretion and/or commit an error of law in the appointment of a Receiver by a) not holding a hearing to establish facts sufficient to justify the Receiver's appointment; b) not completing its appointing order establishing a fee schedule or otherwise approving the Receiver's proposed fees; [] c) not requiring periodic reporting and accounting by the Receiver; and d) not establishing the recognized standard of care of the Receiver?

Appellant's Brief at 6.

Appellant's first claim asserts that the trial court erred in granting the Receiver's motion for summary judgment. Our standard of review governing such claims is as follows:

A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non[-]moving party to adduce sufficient evidence on an issue

- 4 -

essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Thompson v. Ginkel*, 2014 WL 2726989, *2 (Pa. Super. 2014) (citations omitted).

In his first claim, Appellant contends that the trial court improperly granted summary judgment because the transcript of his three-day deposition raised genuine issues of material fact. Appellant alleges that his testimony demonstrated that the marital estate sustained significant damage because of "six-figure fees" generated by the Receiver for work that was neither approved nor performed properly. Citing excerpts of his deposition transcript in the reproduced record, Appellant challenges a wide array of the Receiver's activities in managing the affairs of Appellant's real estate businesses. *See* Appellant's Brief at 12-14.

Appellant is not entitled to relief based upon his contention that his deposition testimony raised genuine issues of material fact that precluded summary judgment. Our review of the certified record confirms that Appellant never filed the transcripts of his deposition testimony before the trial court.[5] Appellant tacitly acknowledges this fatal oversight and attempts

---

[5] The Receiver filed certain excerpts of Appellant's deposition as exhibits to its summary judgment motion.

to overcome this omission by asserting in his brief that, "it is clear that Appellant's [r]esponse to the [m]otion for [s]ummary judgment included supplementation of the record with the Appellant's entire deposition, which was obviously disregarded by the trial court." ***Id.*** at 15. A careful review of Appellant's response, however, belies this assertion. A copy of Appellant's complaint against the Receiver, captioned as "Claim Against Receiver," is the only exhibit attached to Appellant's response. No other exhibits are included with Appellant's filing.

As our standard of review establishes, where the non-moving party bears the burden of proof on an issue, he may not rely on his pleadings or answers in order to survive summary judgment. ***Thompson***, ***supra***. To withstand his opponent's motion, the non-moving party "must set forth specific facts by way of affidavit, or in some other way as provided by the rule, demonstrating that a genuine issue exists." ***Salerno v. Philadelphia Newspapers***, 546 A.2d 1168, 1171 (Pa. Super. 1988). Here, Appellant claims that his deposition transcript raised material issues of fact and that the trial court erred in disregarding this material. Although reliance upon deposition testimony is an approved means of resisting summary judgment, ***see*** Pa.R.C.P. 1035.1 (the term "record" includes depositions) and Pa.R.C.P. 1035.3 (within 30 days, adverse party must identify one or more issues of fact arising from the record that controverts evidence cited in the motion), the certified record shows that Appellant never filed his deposition testimony

before the trial court. Hence, Appellant is not entitled to relief on his opening claim.

Appellant's effort to circumvent this defect by including his deposition transcript in the reproduced record is unavailing. Our appellate rules define the record on appeal as follows:

**Rule 1921. Composition of Record on Appeal**

The original papers and exhibits filed in the lower court, paper copies of legal papers filed with the prothonotary by means of electronic filing, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court shall constitute the record on appeal in all cases.

Pa.R.A.P. 1921.

"It is well-established that this Court may only consider items which have been included in the certified record and those items which do not appear of record do not exist for appellate purposes." *McEwing v. Lititz Mut. Ins. Co.*, 77 A.3d 639, 644 n.2 (Pa. Super. 2013) (internal quotation and citation omitted). Moreover, "[t]he failure to include a document in the certified record is a deficiency which cannot be remedied merely by including copies of the missing documents in a brief or in the reproduced record." *Id.* (internal quotation and citation omitted).

In this case, our decision not to review the portions of Appellant's deposition transcript included within the reproduced record is not motivated by wooden adherence to inflexible formalities. On occasion, this Court is willing to make informal inquiries and ask trial courts to locate documents

filed before them and certify those materials as supplemental records. **Cf**. **id**. Here, however, the thrust of Appellant's claim is that the trial court erred in granting summary judgment by disregarding his deposition testimony. It is obvious that a trial judge cannot err in failing to consider materials that a litigant never filed with the court. Thus, reviewing the reproduced record would do nothing to aid our assessment of whether the trial court erred in granting the Receiver's motion. Moreover, we reject Appellant's suggestion that the trial court should have requested "missing" transcripts from his counsel. **See** Appellant's Brief at 15. Rule 1035.3 places the burden of responding to a motion for summary judgment squarely upon the non-moving party, not the trial court. Pa.R.C.P. 1035.3(a)(1) and (2) (**adverse party** must, within 30 days of service of motion, identify either issues of fact in the record or evidence essential to a claim or defense). For each of these reasons, this Court cannot consider the reproduced record of Appellant's deposition transcript.[6]

In his next claim, Appellant asserts that the trial court erred and abused its discretion in granting summary judgment before the designated close of discovery. Appellant points out that the trial court entered summary

---

[6] Appellant's brief makes a passing reference to a claim that the trial court disregarded material issues of fact regarding the Receiver's performance that emerged from a contempt hearing conducted before the trial court in advance of its order granting summary judgment. Appellant's Brief at 14. This claim is wholly undeveloped and thus waived.

judgment in favor of the Receiver on May 15, 2013, notwithstanding an existing order that discovery would close on or around May 31, 2013, which was 60 days after Appellant's deposition. Appellant also notes that the Receiver's deposition was never taken and that certain documents requested from the Receiver were not produced. Appellant concludes that he was prejudiced because he did not get a full and fair opportunity to supplement the discovery record and to oppose the Receiver's motion.

As stated above, Rule 1035.3 governs responses to motions for summary judgment, including situations in which a party is unable to oppose requests for summary disposition. In relevant part, it states:

**Rule 1035.3. Response. Judgment for Failure to Respond**

\* \* \*

(b) An adverse party may supplement the record or set forth the reasons why the party cannot present evidence essential to justify opposition to the motion and any action proposed to be taken by the party to present such evidence.

(c) The court may rule upon the motion for judgment or permit affidavits to be obtained, depositions to be taken or other discovery to be had or make such other order as is just.

Pa.R.C.P. 1035.3.

In *Kerns v. Methodist Hosp.*, 574 A.2d 1068 (Pa. Super. 1990), we discussed at length the factors relevant to a trial court's discretionary authority to insure prompt and adequate discovery and the interplay of that authority with the court's consideration of dispositive motions. In *Kerns*, we said:

It is well-settled that Pa.R.C.P. 1035[] controls claims that summary judgment was improvidently granted prior to the completion of necessary discovery. It is equally well-settled that the standard of review for an appellate court reviewing a decision to grant or deny a continuance to complete further discovery under Pa.R.C.P. 1035[] is whether the trial court abused its discretion.

The [appellants in **Kerns**] complain that they were not given an adequate opportunity for discovery. The applicable rules provide no timetable for discovery; rather, the parties are permitted to engage in the various types of discovery simultaneously, subject to the supervision of the trial court. In supervising discovery, the trial court has broad discretion to take such action as it deems appropriate to insure prompt and adequate discovery.

It may be an abuse of discretion to deny a continuance to complete further discovery when the party opposing summary judgment has been denied an adequate opportunity to conduct reasonable discovery. In [a prior case], this Court held that the trial court erred in failing to apply Pa.R.C.P. 1035[] and in granting summary judgment when the moving party had failed to disclose necessary documents and records. We concluded by noting that the opposing party was entitled to an opportunity to conduct appropriate discovery. Similarly, in [another case], this Court held that the trial court had abused its discretion in scheduling a class certification hearing, *sua sponte*, less than five months after the filing of a complicated class action suit, despite the fact that the plaintiff was still pursuing timely discovery on the very issue to be decided in the certification hearing.

On the other hand, appellate courts of this Commonwealth have found no abuse of discretion in denying a continuance to pursue further discovery pursuant to Pa.R.C.P. 1035[] when a reasonable period for discovery had expired, and the opposing party failed to demonstrate the materiality of the outstanding discovery or the opposing party failed to demonstrate that it had proceeded in a timely manner with respect to the discovery sought. In [one case], this Court found no abuse of discretion in denying a continuance because the outstanding discovery requests could not have provided material evidence sufficient to withstand summary judgment had the continuance sought been granted. In [another case], this Court held that the trial court []

- 10 -

abused its discretion in permitting an eleventh-hour deposition of a material witness whose identity and whereabouts had been known for more than four years. In [still another case], this Court rejected a claim that an inadequate discovery period had been permitted. We noted that counsel had failed to commence discovery until after the pleadings were closed, the three and one half months available for discovery after pleadings were closed was more than sufficient given the uncomplicated nature of the case, and the efficacy of the further discovery requested was wholly speculative.

*Kerns*, 574 A.2d at 1073-1074 (internal case citations and footnote omitted).

Applying the factors set out in *Kerns*, we are persuaded that the trial court did not abuse its discretion in granting the Receiver's motion for summary judgment shortly before the scheduled conclusion of discovery. We begin with a review of the timeline of the events of this case, which reveals that the trial court permitted a reasonable time-period for discovery. Appellant filed his claims against the Receiver on December 14, 2011, shortly after the conclusion of the parties' equitable distribution trial. Almost one year later, in November 2012, the Receiver moved for summary judgment. Appellant timely responded within 30 days. The Receiver's motion remained pending before the court for approximately six months before the trial court granted summary judgment on May 15, 2013. The only uncompleted discovery that Appellant mentions in his brief is the deposition of the Receiver and unspecified documents that the Receiver failed to produce. There is little doubt that Appellant became aware of the need to commence and diligently pursue discovery in support of his claims

- 11 -

once he initiated litigation against the Receiver. All doubt was removed once the Receiver moved for summary judgment. Given the nature of the claims asserted in this matter, and the other factors addressed below, we believe the eighteen-month time-period from the commencement of Appellant's claims until the order granting summary judgment was a period of sufficient length within which Appellant could conduct a single deposition and press his claim for any outstanding discovery.

We also conclude that the unsubstantiated probative value of the outstanding discovery weighs against finding an abuse of discretion. We examine this factor by looking to the totality of the circumstances of this litigation. Appellant does not challenge the actions of an entity with which he was unfamiliar. His own filings confirm that he created, nurtured, and operated the various real estate entities at issue for at least two decades. Because of this, Appellant was deeply familiar with their operations and he was uniquely positioned to assist his counsel in developing litigation strategies against the Receiver, targeting material documents for production, and identifying key witnesses for deposition. Indeed, Appellant leveled a lengthy list of claims challenging numerous aspects of the Receiver's oversight and operation of the real estate businesses. Despite this and despite the intimacy and depth of Appellant's (and his counsel's) knowledge of the real estate entities, Appellant nowhere explains what information he hoped to uncover through the outstanding discovery, how that information

would have supported his claims, and why any unproduced or undiscovered information would have altered the trial court's disposition of the Receiver's motion. In short, Appellant made no effort, before the trial court or this Court, to demonstrate the significance of any pending discovery.

For related reasons, we fail to see how Appellant was prejudiced by any supposed deprivation of a full and fair opportunity to oppose the Receiver's motion. While this case was pending before the trial court, Appellant never advanced any explanation, pursuant to Rule 1035.3(b), as to why the outstanding discovery was impeding his efforts to respond to the Receiver's filing or to withstand summary judgment. We agree with the trial court's assessment that further discovery in this case would have been futile as of May 15, 2013 and that it was appropriate at that juncture to turn to the merits of the Receiver's motion. **See** Trial Court Opinion, 9/4/13, at 5. Thus, given Appellant's failure to show an inadequate period for investigation, the materiality of any outstanding discovery, or any prejudice resulting from the trial court's actions, we discern no abuse of discretion in the trial court's order granting summary judgment two weeks before the previously scheduled completion of discovery. **See Pappas v. UNUM Life Ins. Co. of America**, 856 A.2d 183, 186 (Pa. Super. 2004) ("Summary judgment may be entered prior to the completion of discovery in matters where additional discovery would not aid in the establishment of any material fact.") (citation omitted).

In large part, Appellant's remaining claims challenge the trial court's procedures for implementing the receivership and the contents of the trial court's appointment order. Specifically, Appellant claims the trial court erred in failing to conduct a fact hearing before appointing the Receiver. Additionally, Appellant argues that an appointment order must mandate: 1) periodic accounting by the receiver; 2) preapproval of fees; and, 3) a standard of care for the receiver which embraces a concept of ordinary negligence. We address each of these claims in turn. After we address Appellant's final contention regarding the trial court's identification of an appropriate standard of care in an appointment order, we shall then review the trial court's application of the standard to the summary judgment record in this case.[7]

As our factual recitation states, Wife moved for the appointment of a receiver in December 2009, citing specific grounds for her concerns about preserving the marital estate. Appellant responded through counsel. Thereafter, the trial court convened oral argument on Wife's request and heard from both parties' counsel. At the conclusion of the argument, the trial court appointed the Receiver. By the time the court appointed the

_____

[7] We recognize that Appellant's challenge to the appointment order focuses on the propriety of the trial court's appointment process, while application of the standard of care involves a more conventional summary judgment analysis. We believe, however, that the close logical connection between these two issues merits consecutive treatment.

Receiver in this case, it had presided over the parties' divorce litigation for six years. During this period, the trial court no doubt developed familiarity with both the facts and the parties. *See* Trial Court Opinion, 9/4/13, at 7. Appellant cites no authority compelling the trial court to convene an evidentiary hearing prior to the appointment of a receiver. In view of the trial court's knowledge of the litigants and the issues, together with the parties' opportunity to advocate their respective positions on the appointment of a receiver, we discern no impropriety or error in the trial court's appointment following oral argument.

Appellant next asserts that an order appointing a receiver should mandate periodic accounting, preapproval of fees, and a standard of care that holds the receiver liable for his ordinary negligence. Appellant argues that more stringent judicial oversight is appropriate because Pennsylvania law embraces ordinary negligence as the standard of care that governs the Receiver's actions in pursuit of his charged duties, in contrast with the determination of the trial court. The trial court rejected this contention, concluding instead that a receiver derives his powers and liabilities exclusively from the court's appointment order. Although our research confirms an admitted paucity of recent case law on the scope and nature of a receiver's liability under Pennsylvania law, we summarize the relevant principles below.

"The authority of a receiver and the effect of his action depend almost entirely on the purpose of his appointment and the extent of his powers conferred by the decree appointing him." ***Duplex Printing Press Co. v. Clipper Pub. Co.***, 62 A. 841-842 (Pa. 1906). "The legal status of a receiver, his authority and duty, is clear. He is the officer-the executive hand-of a court of equity. His duty is to protect and preserve, for the benefit of the persons ultimately entitled to it, an estate over which the court has found it necessary to extend its care." ***Warner v. Conn***, 32 A.2d 740, 741 (Pa. 1943) (internal quotations and citations omitted).

In describing the power of a receiver to make business judgments within the scope of his appointed duties, our Supreme Court has said:

> The authority of a receiver, as an executive in control, is subject to the court alone; **he exercises the functions of the board of directors, managers and officers, takes possession of corporate income, property, and assets, directs not only its operation, but, *while in control, its policies on all lines*.** It is his duty to preserve the property from untimely sale, and his obligation in this respect differs from that of a sheriff or other officer commanded to execute a writ in a given time. He has power to delay action until a more advantageous time is present, when it may not be necessary.

***Continental Bank & Trust Co. of New York v. American Assembling Mach. Co.***, 38 A.2d 220, 222-223 (Pa. 1944) (emphasis added).

An appointment order entered by a court is not the sole means through which a receiver might engage in permitted action. Subsequent ratification and approval by a court also offer safe harbor for a receiver's activities. ***See In re Wilson's Estate***, 97 A. 453, 454 (Pa. 1916) (A

"[r]eceiver of [a] corporation does not become personally liable on [a] note given without authority in [the] absence of fraud, concealment, or intention or agreement to assume liability. Ratification and approval by [the] court of [the] account of [the] receiver showing [the] giving of [the] note without authority is equivalent to prior authority by court."). The court that appointed the receiver retains exclusive jurisdiction over matters such as the presentation and adjudication of claims, the distribution of estate property, and the receiver's accounting. **Warner**, 32 A.2d at 741; **Garland v. Wilson**, 137 A. 266, 268 (Pa. 1927).

Appellant cites four Pennsylvania cases in which surcharges against receivers were upheld because the appointing courts found that the receivers acted negligently and were otherwise derelict in their court-appointed duties. **See** Appellant's Brief at 17, *citing* **American Assembling Mach. Co.**, 38 A.2d at 224 (receiver surcharged and commissions disallowed where trial court found receiver to be negligent, guilty of wasting assets, and guilty of purchasing receivership assets without court approval); **Pangburn v. American Vault, Safe & Lock Co.**, 54 A. 508 (Pa. 1903) (receiver surcharged and commissions disallowed where trial court found receiver to be negligent, guilty of wasting assets, guilty of acting without good faith, and guilty of concealing personal interest in purchase of receivership assets); **Simpson v. Kerkeslager**, 1909 WL 547, *5 (Pa. Super. 1909) (receiver held personally responsible to insurance agent for premiums paid

by agent on property insurance where receiver ultimately learned that entity in receivership had no interest in insured property); and, **Covington v. Hawes-LA Anna Co.**, 91 A. 514 (Pa. 1914) (receiver surcharged and compensation disallowed where receiver admitted negligence to trial court and facts overwhelmingly established receiver's responsibility for shrinkage of receivership assets). These cases are easily distinguishable from the present matter in which the trial court approved the Receiver's conduct and found no malfeasance, bad faith, or gross negligence. In each case, the appointing courts specifically found that the receivers failed to discharge their duties. Hence, we are not persuaded that these cases establish an ordinary negligence standard for all Pennsylvania receiverships. The trial court properly determined that, under Pennsylvania law, the standard of care is set by the appointment order.[8]

---

[8] We are reluctant to expand, in all cases, the standard of care to include ordinary negligence in the absence of clear statutory or precedential guidance. By definition, courts appoint receivers to oversee the operations of troubled entities or entities that must be operated, at least temporarily, for the benefit of individuals or groups whose interests might not align precisely with those of the original owners, as in the present matter. Monitoring and approval by the court offers the best solution to guard against poor stewardship in these unique situations. To allow claims predicated largely upon unsupported contentions that routine, daily business functions could have been performed "better," as Appellant seems to argue in the present case, would frustrate this process. In this connection, we note that the business judgment rule insulates managers of a business from liability for business decisions made: (1) in good faith; (2) where the manager is not interested in the subject of the business judgment; (3) is informed with respect to the subject of the business judgment to the extent
*(Footnote Continued Next Page)*

In any event, whether the standard of care applicable to the Receiver is confined to malfeasance, bad faith, and gross negligence or whether it extends further to include ordinary negligence, as Appellant suggests, is substantially immaterial to our determination of whether the trial court erred in granting the Receiver's motion.[9] We have reviewed the summary judgment record, including the Receiver's motion and its exhibits, Appellant's response and the attached claim against the Receiver, and Appellant's answers to interrogatories.[10] Our effort to ferret out a precise factual basis for Appellant's claims has proven fruitless. The record reveals

_(Footnote Continued)_ ────────────

he reasonably believes to be appropriate under the circumstances; and (4) rationally believes that the business judgment in question is in the best interests of the organization. **_See Viener v. Jacobs_**, 834 A.2d 546, 557 (Pa. Super. 2003), _appeal denied_, 857 A.2d 680 (Pa. 2004). In light of the monitoring function of the court, we see no reason, and Appellant has offered none, to expose a receiver to greater liability than that which is imposed upon other similarly situated managers.

[9] We note that Appellant's claim against the Receiver did not include a claim for ordinary negligence. The only theories alleged by Appellant included malfeasance, bad faith, and gross negligence, consistent with the trial court's appointment order.

[10] Appellant filed answers to interrogations with the court on July 23, 2012. Appellant's Answers to Interrogatories and Requests for Production of Documents, 7/23/12. In his answers, Appellant complained that the Receiver failed to pay bills in a timely manner. **_Id_.** at 2-3. Appellant, however, never identified the bills that were not paid on a timely basis. Moreover, Appellant's answers made only broad, unspecified accusations with respect to his claims alleging improper billing procedures, inflated bills, the qualifications of marketing and management personnel, property maintenance, and co-mingling of funds. Appellant also offered no factual basis for his damage claims.

that Appellant failed to come forward with specific evidence that raised genuine issues of material fact. Appellant's bald and speculative assertions regarding the Receiver's conduct lack specific evidentiary support and are insufficient to withstand summary judgment.

As the trial court determined, the Receiver's activities were authorized by the appointment order or subsequently approved or ratified by the court.

> In this case, [Appellant], made bald accusations of malfeasance. He claims actions of the Receiver were grossly negligent, but ignores that those acts were either pre-authorized or otherwise ratified by [the court] after adequate and factually detailed justification in support of those actions was presented to the [court] by the Receiver. [Appellant] further ignores that the very actions he complains of led to the preservation of the marital estate or, indeed, its increase in value. As examples: 1) [o]n June 16, 2010, [the court] entered an [o]rder which authorized the Receiver to post a $60,000.00 cash bond to allow for the dedication of a road in the Enclave Development without which said development was stalled; 2) [o]n March 16, 2011, [the court] entered an order permitting the Receiver to hire a contracting firm to repair one of [Appellant's] properties preventing its condemnation and increasing its sale price; 3) [l]astly, in [the court's] termination order, [the court] authorized and approved payment of the Receiver's fees.
>
> In this case, [Appellant] has failed to meet his burden of establishing a disputed issue of material fact. That he has disputes with business choices made by the Receiver which were ratified by this court does not constitute a "material" factual dispute, when such choices did not result in damages.

Trial Court Opinion, 9/4/13, at 4-5.

Moreover, even if the applicable standard of care permitted liability for ordinary negligence, Appellant failed to prove damages in the form of a

cognizable diminution in the value of the marital estate. The trial court made the following findings which are supported by the record.

> [Appellant never raised exclusion of ordinary negligence from the court's appointment order and never advanced this theory of relief in his claim against the Receiver. But even if the trial court were to apply a mere negligence standard, t]he Receiver preserved the value of the marital estate, as he was charged to do and as the record demonstrates, so there are no damages which could be asserted. As damages are an essential element of a claim whether negligence and gross negligence is asserted, the lack of damages defeats the claim, making [s]ummary [j]udgment appropriate.

*Id*. at 6. We concur with the factual and legal components of this assessment.[11]

---

[11] In addition to alleged diminution in value of receivership property, Appellant's claims also assert that, "the marital estate in this case was subject to unnecessary fees and a severe diminution of value under the Receiver's watch." Appellant's Brief at 18. Appellant attributes much of this alleged loss to the Receiver's activities involving a homeowners' association. *See id*. at 19. Appellant, however, does not specify what activities and which corresponding fees were unwarranted. Thus, his vague assertion is insufficient to resist summary judgment. To advance a viable claim, Appellant needed to specify the unwarranted activities, aggregate the time allotted to those tasks, and multiple that time by the Receiver's compensation rate. This method would produce an alleged ascertainable loss that could be presented at trial. In the absence of such a specific contention, summary judgment was appropriate.

Appellant also appears to suggest that the trial court's termination of the Receivership lends evidentiary support for his claims. *Id*. This contention lacks merit. The trial court terminated the Receivership after the parties' equitable distribution trial. At this point, there was no longer any purpose for the Receivership since the parties had taken possession of their respective shares of the businesses and the properties. Trial Court Opinion, 9/4/13, at 7.

Because Appellant has failed to specify evidence that raises a genuine issue of material fact, summary judgment was appropriate. We also reject Appellant's challenges to the trial court's appointment order and procedures. Accordingly, we affirm the judgment entered in favor of the Receiver and against Appellant.

Judgment affirmed. Motion to quash denied as moot.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/3/2014