# CHARLES D. STEIN REVOCABLE TRUST, Appellant,

v.

# GENERAL FELT INDUSTRIES, INC., Appellee.

Superior Court of Pennsylvania.

Argued Feb. 29, 2000.

Filed April 3, 2000.

Robert S. Forster, Philadelphia, for appellant.

Georgian L. O'Hara, Philadelphia, for appellee.

Before McEWEN, President Judge, and JOHNSON and OLSZEWSKI, JJ.

JOHNSON, J.:

¶ 1 In this appeal we determine whether Philadelphia Business Privilege Tax (BPT) and Net Profits Tax (NPT) imposed on the lessor of a commercial leasehold are taxes arising by reason of the occupancy, use or possession of that leasehold. We hold that BPT and NPT do not so arise because they do not derive from "actual physical control" of the leasehold real estate by the lessee. We conclude accordingly that a lessor may not compel its lessee to pay either tax on the assertion of lease terms requiring the lessee's payment of "taxes arising by reason of the occupancy, use or possession" of the leasehold.

¶ 2 Charles D. Stein Revocable Trust (Landlord) appeals the trial court's order granting summary judgment, terminating Landlord's contract claim against General Felt Industries, Inc. (Tenant) to recover NPT and BPT Landlord paid the City of Philadelphia. Landlord asserts that Tenant agreed to pay these sums under the terms of a lease of real property. We conclude that the lease does not obligate Tenant to pay the taxes in question. Accordingly, we affirm the trial court's order.

¶ 3 Landlord and Tenant are assignees of a commercial lease under the terms of which Tenant occupies a warehouse structure at 2121 Wheatsheaf Lane in the City of Philadelphia. The parties' predecessors in interest entered the lease on April 14, 1961. The current extension of the lease expires on April 13, 2001. The provisions of the lease at issue in this appeal allocate responsibility for the payment of certain taxes and have remained unchanged throughout the duration of the leasehold. The lease does not apportion or discuss specific responsibility for Philadelphia's NPT or BPT.

¶ 4 In November 1994, the City of Philadelphia apprised Landlord that its NPT and BPT remained unpaid for the years 1986 through 1994. The accrued amount of the taxes exceeded $360,000, for payment of which Landlord made a demand on Tenant, relying on the broad language of sections 302 and 307 of the parties' lease. Tenant refused payment, asserting that the lease required the tenant to pay only taxes levied against the leasehold premises. *See* Reproduced Record (R.R.) at 7a, § 302. Tenant argued that the NPT and BPT were not taxes levied against the leasehold premises, but were instead, taxes on Landlord's individual income. Consequently, Landlord commenced this action to enforce the purported mandate of its lease.

¶ 5 This matter proceeded in the trial court before the Honorable Gene D. Cohen on cross-motions for summary judgment. Judge Cohen granted summary judgment in favor of Tenant, concluding that the NPT and BPT were not levied against the leasehold premises and did not arise by reason of the occupancy, use or possession of the premises. Trial Court Opinion, 9/15/99, at 3. Rather, the court reasoned that the NPT and BPT were taxes based on Landlord's income and so, could not be subject to payment under the lease absent a clear provision enumerating Tenant's responsibility for those specific taxes. *Id.* at 3 (quoting *Northern Liberties Gas Co. v. United Gas Improvement Co.*, 348 Pa. 433, 35 A.2d 284 (1944)). Consequently, Landlord filed this appeal.

¶ 6 Landlord raises the following question for our review:

1. Whether the plain language of a commercial real property lease that explicitly obligates the Tenant to pay "all taxes ... arising by reason of the occupancy, use or possession of the premises," and which further specifies that the Landlord is to receive all payments from the Tenant

"absolutely net" of "all taxes," obligates the Tenant to pay the Philadelphia Business Privilege Taxes that are imposed solely because the Tenant leases (i.e., occupies, uses and possesses) the real property from the Landlord?

Replacement Brief for Appellant Charles D. Stein Revocable Trust (Brief for Appellant) at 3.

¶ 7 Our scope of review of an order granting summary judgment is plenary. *See Swartley v. Hoffner*, 734 A.2d 915, 918 (Pa.Super.1999), *appeal denied*, —— Pa. ——, 747 A.2d 902 (1999). Accordingly, we apply the same standard as the trial court, reviewing all of the evidence of record to determine whether there exists a genuine issue of material fact. *See id.* In the absence of a factual dispute, we must discern whether the moving party is entitled to judgment as a matter of law. *See id.*

■■■ ¶ 8 Neither party disputes the material facts of the case before us. Accordingly, our determination is limited to interpretation of the parties' contractual agreement. Interpretation of a contract, in this case a lease, poses a question of law. *See Halpin v. LaSalle Univ.*, 432 Pa.Super. 476, 639 A.2d 37, 39 (1994). *See also Clearfield Vol. Fire Dep't v. BP Oil, Inc.*, 412 Pa.Super. 29, 602 A.2d 877, 879 (1992) ("A lease is a contract and is to be interpreted according to contract principles."). "In construing a contract, the intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." *Village Beer & Beverage, Inc. v. Vernon D. Cox & Co., Inc.*, 327 Pa.Super. 99, 475 A.2d 117, 121 (1984). If the language appearing in the written agreement is clear and unambiguous, the parties' intent must be discerned solely from the plain meaning of the words used. *See Clearfield Vol. Fire Dep't*, 602 A.2d at 879. Moreover, "[o]ne part of a contract cannot be so interpreted as to annul another part[;] rather writings which comprise an agreement must be interpreted as a whole." *Village Beer*, 475 A.2d at 121.

¶ 9 In this case, the parties agree that responsibility for payment of taxes under their agreement is governed by Article 3 of the lease, entitled "RENT—TAXES—INSURANCE." Consistent with the article's designation, its terms require the tenant to insure the premises against fire, to insure the structure's boiler and pressure vessels, and to pay all utility charges. R.R. at 8a–9a, §§ 303, 304, 306 (respectively). In addition, Article 3 directs the tenant to insure the landlord against liability for personal injury and property damage arising on the leased premises and on the adjacent public walkways. *Id.* at 8a, § 305. The first of the provisions at issue here appears to reflect the landlord's concern that the tenant assume responsibility for payment of public assessments on the real property itself or payment for services supplied to the property. *Id.* at 8a, § 302. Section 302 defines all such amounts as "taxes":

> *Section 302. Taxes and Assessments*
>
> TENANT shall pay as additional rent, as they become due and payable[,] ... all taxes, charges, claims, assessments, water and sewer rents, and other charges which may be assessed or levied by any public authority against the premises, or arising by reason of the occupancy, use or possession of the premises. All of the foregoing are hereinafter collectively referred to as "taxes".

R.R. at 7a, § 302. Finally, section 307 characterizes the parties' agreement as a "net return" lease:

> *Section 307. Rent on Net Return Basis*
>
> It is intended that the rent provided for in this Lease shall be an absolutely net return to LANDLORD for the term of this Lease, free of any expenses or charges with respect to the premises,

including all taxes and assessments now or hereafter imposed upon or in respect of the premises.

R.R. at 9a, § 307. Landlord relies on sections 302 and 307, explicitly, to establish Tenant's obligation to pay Landlord's NPT and BPT. Landlord argues that because its lease of the premises is its only business activity and source of income in the City of Philadelphia the NPT and BPT the city imposes necessarily arise "by reason of the occupancy, use or possession of the premises" as contemplated in section 302. Landlord argues that section 307 supports its interpretation of section 302, as it expresses the parties' intention that the landlord should be relieved of all expenses with respect to the premises, allowing an "absolutely net return" on the rent proceeds.

¶ 10 Upon review of sections 302 and 307, in context with the remainder of Article 3, we conclude that the clear language of the lease establishes the parties' intention to shift to the tenant primary responsibility for expenses incurred to operate the leasehold premises as a commercial enterprise. *See Village Beer*, 475 A.2d at 121 ("the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished"). In so doing, the lease ensures the landlord the maximum benefit of the income stream generated by the property, free and clear of expenses to which the property would be subject by reason of the tenant's use.

¶ 11 However, we find no indication that the parties intended, or even contemplated, that the tenant's liability should exceed those expenses integral to the tenant's business use of the real property. This conclusion is supported both by the words and phrases of sections 302 and 307 and by the nature of the concerns addressed in Article 3 generally. Sections 303 through 306 require the tenant to purchase insurance against liability and property loss, and to pay charges for utility service.

Such expenses are predictable antecedents to the operation of real property used for commercial purposes and might be reasonably assumed by a commercial tenant as a cost of doing business.

¶ 12 Similarly, taxes levied or assessed "against the premises" prescribed by section 302 are integral to the operation of commercial activity on those premises. Unless such taxes are paid, the property is subject to lien and eventual seizure by the taxing entity. Consequently, the tenant's assumption of such taxes is reasonably attributable to the cost of doing business. Taxes "arising by reason of the occupancy, use or possession of the premises" (but not assessed "against the premises"), also described by section 302, are likewise attributable as a reasonable business expense because they bear a direct nexus to the real property. This interpretation is compelled by the plain meanings of "occupancy" and "possession," both of which denote actual physical control of the geographic space of the leasehold. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED 1560 (1976) (defining "occupancy" as "**1 a:** the taking and holding possession of real property under a lease or tenancy at will"). *See also id.* at 1770 (defining "possession" as "**1 b:** actual physical control or occupancy of property by one who holds for himself and not as a servant of another without regard to his ownership and who has legal rights to assert interests in the property against all others having no better right than himself"). Clearly, taxes arising from the tenant's "actual physical control" of the real property as one who asserts legal rights in it reasonably might be contemplated by the parties as an expense of the tenant's commercial enterprise, to be borne by the tenant. Consequently, we interpret the parties' lease to require the tenant to pay such taxes, and only such taxes, as are levied or assessed against the real property or arise from the tenant's actual physical control of the real property.

¶ 13 Further direction under section 307 of the lease that rent "shall be an absolutely net return to the LANDLORD," does not effect our conclusion, as the language of this provision, when considered in context, does not operate to expand the language of section 302. In point of fact, section 307 merely summarizes the parties' intentions as detailed in the previous sections of Article 3. Consistent with sections 303 through 306, section 307 concludes that the rent shall be "free of any expenses or charges with respect to the premises." Consistent with section 302, section 307 specifies the tenant's responsibility for "all taxes and assessments now or hereafter imposed upon or in respect of the premises." Consequently, we must discern, in accordance with the terms of section 302, whether the NPT and BPT arise from Tenant's "actual physical control" of the real property.

¶ 14 Both the NPT and BPT are prescribed by provisions of title 19 of the Philadelphia City Code and Home Rule Charter. The NPT is imposed by section 19–1502(1), subsections (c) and (d) of the Code and is applied by the Code as follows:

> The tax levied under § 19–1502(1)(c) and (d) shall relate to and be imposed on the net profits of any business, profession, or enterprise carried on by any person as owner or proprietor, either individually or in association with some other person or persons.

PHILADELPHIA, PA., CODE § 19–1502(3). Accordingly, the remittance required of individual taxpayers is calculated as a percentage of net profits earned. *See id.* at § 19–1502(1)(c), (d). The Code defines "net profits" as follows:

> *Net Profits.* The net gain from the operation of a business, profession or enterprise, after provision for all allowable costs and expenses incurred in the conduct thereof, either paid or accrued in accordance with the accounting system used, without deduction of taxes based on income[.]

*Id.* § 19–1501(4).

■ ¶ 15 Upon consideration of these sections, we cannot conclude that the NPT arises from Tenant's "actual physical control" of the real property governed by the parties' lease. Indeed, its nexus to the real property or Tenant's control of the property is tenuous. The tax bears no necessary relation to either and would be assessed on net gain from the operation of any business in which Landlord chose to engage. The Code provides no indication that the source of the gain is of any relevance to imposition of the NPT or to the rate at which the NPT is assessed, so long as the gain occurs by reason of the taxpayer's conduct of a "business, profession or enterprise." Accordingly, the fact that Landlord's gain was realized in the rental of real property is of no relevance to assessment of the tax and does not trigger Tenant's obligations under the lease. Clearly, the NPT is not a tax on the property and is not assessed by reason of Tenant's "actual physical control" of the property. Rather the tax appears to be in the nature of a tax on income. Consequently, Tenant has no obligation under the lease before us to pay NPT assessed on Landlord's gain or to reimburse Landlord for its own past payments of the tax. *Cf. Northern Liberties Gas Co. v. United Gas Improvement Co.*, 348 Pa. 433, 35 A.2d 284 (1944) ("A covenant by a lessee to pay the income taxes of the lessor is not within the terms of the contracts unless the obligation is clearly and directly specified.").

¶ 16 The BPT, also prescribed by title 19 of the Code, is assessed on the individual's "active presence" for business in the City of Philadelphia. *See* PHILADELPHIA, PA., CODE § 19–2603(3), 2604(1)(a). The Code imposes and defines the nature of the tax as follows:

> In accordance with the provisions of the Act known as the First Class City Business Tax Reform Act, a tax is hereby

imposed upon every person engaging in any business in the City of Philadelphia beginning with the tax year 1985, and annually thereafter.

* * * *

Any person having an active presence in the City is subject to the tax imposed by this Section. Any activity within the City by a person, through one or more employees, agents or independent contractors, that makes possible the creation, realization or continuance of contractual relationships between the person and customers located within the City, including but not limited to, the solicitation within the City by a person, through one or more employees, agents, or independent contractors, is sufficient to constitute active presence in the City. Physical presence (the maintenance of an office or property) in the City is not required to establish active presence in the City.

*Id.* § 19–2603(1), (3). The Code assesses the BPT as a percentage of the "net income" the individual derives from his business contacts in Philadelphia. *See id.* § 19–2604(1)(a). Significantly, the definition of "net income" applicable under this section is virtually identical to the formulation applied by the NPT to "net profits," but limits its reach to businesses.

> *Net Income.* The net gain from the operation of a business, after provision for all allowable costs and expenses actually incurred in the conduct thereof, either paid or accrued in accordance with the accounting system used, without deduction of taxes based on income[.]

*Id.* § 19–2601(a)(1). *Cf.* § 19–1501(4) (including as "net profits" gain from a "profession or enterprise"). Though application of the BPT is thus limited to gain derived from the conduct of a "business," the Code demonstrates no further indication that the source of the gain is relevant to imposition of the tax.

¶ 17 Upon review of these provisions, we cannot conclude that a tax on Landlord's active business presence in the City of Philadelphia derives from Tenant's "actual physical control" of the leasehold real estate. The nexus of the BPT to the leasehold realty is, as that of the NPT, tenuous. The BPT is a tax on business opportunities realized in the City from which the taxpayer derives net income. *See id.* § 19–2603(1), (3). The fact that a taxpayer realizes net income only from a single activity or contract, as Landlord here claims, does not change the BPT to a tax on that activity or contract. Rather, the BPT retains its fundamental character as an assessment for the privilege the City has extended, in theory, to do business within its boundaries and from which the taxpayer has profited. Thus, though the BPT is not as starkly evident a tax on income as the NPT, it remains, clearly, an income-based tax with no necessary relation to any specific business activity. It is not a tax levied against the leasehold real estate in this case and has no necessary relationship with "actual physical control" of the leasehold premises by Tenant. Accordingly, we encounter no hesitation in concluding that assessment of the tax to Landlord does not trigger Tenant's obligations under the current lease. Consequently, we find no error in the trial court's entry of summary judgment in favor of Tenant.

¶ 18 For all of the foregoing reasons, we affirm the trial court's order granting summary judgment in favor of Tenant.

¶ 19 Judgment **AFFIRMED.**