## Cincinnati Insurance Co. v. York Imperial Plastics Inc.

70

C.P. of Lancaster County, no. CI-07-06207.

*Donald M. Desseyn,* for plaintiff.
*Delano M. Lantz,* for defendant Val Products.
*Kevin W. Rethore,* for defendant Technical Polymers.
*Douglas P. France,* for defendant York Imperial Plastics.
*Christopher M. Reeser,* for defendant Entec Polymers.

REINAKER, *J.,* July 19, 2010—Before the court is the plaintiff's motion for summary judgment. At issue is, as a matter of law, whether Cincinnati Insurance Company (CIC) is obligated to defend and indemnify its insured, York Imperial Plastics Inc. (York), in the lawsuit

filed by Val Products Inc. (Val), no. CI-06-04410, and whether additional defendant, Technical Polymers LLC (Technical), is entitled to "additional insured" coverage under the policy issued to York. The court will deny the motion for summary judgment.

## PROCEDURAL AND FACTUAL HISTORY

On May 19, 2006, defendant Val filed a complaint against York asserting claims for breach of contract, breach of implied warranty of merchantability[1] and breach of implied warranty of fitness for a particular purpose.[2] York then filed a joinder complaint against Technical and Entec. Technical filed a cross claim asserting that York agreed to indemnify, defend and hold Technical harmless from all costs, expenses, damages, judgments or other loss, including costs of investigation, litigation and reasonable attorney's fees, arising out of York's selection, use, sale and further processing of the resins. On June 26, 2007, CIC filed this declaratory judgment action requesting the court to determine the rights and obligations owed by CIC under the policy it provided to York. On November 6, 2009, CIC filed a motion for summary judgment regarding the declaratory action, and on January 19, 2010, the court held a hearing on the motion. Shortly thereafter counsel for all parties submitted proposed findings of fact and conclusions of law.

Sometime prior to 1998, Val, a poultry water systems manufacturer, began doing business with York, a custom plastic injection molding manufacturer. York would

---

1. 13 Pa.C.S. §2314.
2. 13 Pa.C.S. §2315.

manufacture and supply to Val plastic housings for the poultry watering systems. Those plastic housings included nipple drinker housings and water regulator housings. From 1998 to sometime in June or July of 2003, York used a resin supplied by GE called Xenoy 5220 to produce the housings. Val alleges that York then switched to using resins from Entec and Technical without the knowledge or consent of Val. The resin supplied to York by Technical was sold pursuant to purchase order/invoice documents that were exchanged by the parties. Included was a provision requiring York to defend and indemnify Technical from any claim arising out of York's "selection, use, sale and further processing" of the resins sold. York claims that it understood the resins it was purchasing to be either identical, or at least comparable, to the Xenoy 5220. However, with the passage of time and use in the field, the housings began to suddenly crack in large numbers. It wasn't until after customer complaints and an investigation by Val that Val discovered the change in resin being used by York. From this discovery, the underlying action by Val arose. At all times pertinent, CIC had issued a commercial general liability insurance policy and commercial umbrella insurance policy to York. Following the filing of the complaint by Val against York, York sought a defense and indemnification from CIC under the policies.

## DISCUSSION

Summary judgment may only be granted where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1025(b). The burden is on the moving party to prove the absence of a genuine, material factual dispute. *Thompson*

*Coal Company v. Pike Coal Company,* 488 Pa. 198, 412 A.2d 466 (1979). The record is to be examined by the court in the light most favorable to the non-moving parties with the non-moving parties also being entitled to the benefit of all reasonable inferences. *Marks v. Tasman,* 527 Pa. 132, 589 A.2d 205 (1991). The court is only to determine the existence of a material factual dispute, not the outcome of any factual disputes. *Washington Federal Savings and Loan Association v. Stein,* 357 Pa. Super. 286, 515 A.2d 980 (1986). If there is any doubt as to the existence of a material factual dispute, it must be resolved in favor of the non-moving parties. *Thompson,* 488 Pa. 198, 412 A.2d 466. The proper construction of an insurance policy is a matter of law, and a court may decide whether or not coverage exists for a claim pursuant to a summary judgment motion. *Bishops Inc. v. Penn National Insurance,* 984 A.2d 982, 989 (Pa. Super. 2009).

Insurance contracts are generally contracts of adhesion; there is not equal bargaining between the parties in the transaction. *Id.* "Insurance policies, like all contracts, are enforceable in accordance with the language used." *Id.* at 990. When a court is interpreting the language of an insurance policy, the parties' intentions are paramount. *Id.* The court should "adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." *Charles D. Stein Revocable Trust v. General Felt Industries Inc.,* 749 A.2d 978, 980 (Pa. Super. 2000). Further, regardless of an insurance policy's ambiguity, the policy is subject to a review by the court of the totality of the underlying circumstances. *Id.* The focus of the court is on the reasonable expectation of the insured. *Id.*

In this case, Dennis Paules, on behalf of York, purchased the instant insurance policies from Cincinnati Insurance. At the time Paules purchased both policies, he believed he was receiving product liability coverage that would provide coverage for the very circumstance that exists here. He was under the impression that if York made a defective product which caused property damage after it was incorporated into a customer's final product, the policies would cover the claim. Paules sought to be protected from potential liability, and purchased the policies for this purpose. Recognizing that Paules, as the insured, had little, if any, bargaining power, the proper focus in this case is on his reasonable expectation. It was reasonable for Paules to believe the policies he was purchasing would cover claims such as the claims in this case. He paid the premiums for the policies thinking that he had in fact purchased a certain type of coverage. It was only when CIC denied coverage did he learn that he had apparently received something different, and less, than what he had expected.

The policy language itself supports coverage in this case as well. The commercial general liability policy reads:

"(1) Insuring agreement

"(a) We will pay those sums that the insurance becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. . . .

"(b) This insurance applies to 'bodily injury' and 'property damage' only if:

"(1) the bodily injury or property damage is caused by an 'occurrence that takes place in the coverage territory.'"

"Occurrence" is defined by the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." In determining whether or not an event is an accident or occurrence, the court should view it from the standpoint of the insured. *Donegal Mutual Insurance Company v. Baumharnmers,* 595 Pa. 147, 938 A.2d 286 (2007). An accident refers to an unintentional event that occurs unexpectedly. *Kvaerner Metals of Kvaerner U.S. Inc. v. Commercial Union Insurance Company,* 589 Pa. 411, 908 A.2d 888 (2006).

CIC asserts that the *Kvaerner* case, 589 Pa. 411, 908 A.2d 888, is controlling. In that case, the court determined that faulty workmanship did not constitute an occurrence. However, that case is distinguishable from the present case. The failure of the nipple drinkers out in the field was completely unexpected and unintentional. In fact, their failure was not expected by any party involved. York did not intend to produce a product for Val that would fail and interfere with their ongoing business relationship. Testimony by Paules of York was that he expected the Technical and Entec resins to perform the same as the GE Xenoy 5220. What transpired after the products were in use constitutes an occurrence under the policy in this case.

CIC claims that a number of exclusions in the policy preclude coverage. The first of those is the contractual liability exclusion. However, this exclusion states that the contractual liability exclusion does not apply to damages that the insured would have had in the absence of the contract or agreement. Furthermore, it hasn't even

been determined in the underlying case whether using GE Xenoy 5220 was an essential term of the contract between Val and York.

Additionally, when a court determines that an ambiguity in an insurance policy exists, the ambiguity should be construed against the insurer. *Standard Venetian Blind Company v. American Empire Insurance Company,* 503 Pa. 300, 469 A.2d 563 (1983). An ambiguity exists if the policy language is capable of more than one interpretation. *Id.* Ambiguities exist in the remaining exclusions CIC relies on.

First, the "damage to your product" exclusion at paragraph 2.k of the policy and the "damage to your work" exclusion at paragraph 2.1 of the policy are ambiguous when read in conjunction with the policy. The commercial general liability policy states that it provides coverage for "products-completed operations" and property damage arising out of an "occurrence." The declaration page for the policy indicates that York has limits of insurance of $1,000,000 for "products-completed operations coverage." However, exclusions 2.k and 2.1 appear to attempt to exclude completed operations. The exclusions read

"(k) Damage to your product

" 'property damage' to 'your product' arising out of it or any part of it.

"(1) Damage to your work

" 'Property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'

"This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on behalf of your subcontractor."

As an ambiguity exists, it shall be properly construed against CIC.

CIC also attempts to get out of providing coverage under exclusion M: damage to impaired property or property not physically injured. This exclusion reads as follows

" 'property damage' to 'impaired property' or property that has been physically injured, arising out of

"(1) a defect, deficiency, or inadequacy or dangerous condition in 'your product' or 'your work'; or (2) a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms. This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to 'your product' or 'your work' after it has been put to its intended use."

Property damage is defined under paragraph 20 on page 19 of 22 as:

"(a) Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

"(b) Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

Impaired property is defined in paragraph 11 on page 16 of 22 as:

"Tangible property, other than 'your product' or 'your work' that cannot be used or is less useful because

"(a) It incorporates your product or your work that is known or thought to be defective, deficient, inadequate or dangerous; or

"(b) You have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by: (a) the repair, replacement, adjustment or removal of your product or 'your work'; or (b) your fulfilling the terms of the contract or agreement."

CIC reads this exclusion as working in its favor and excluding coverage in this case. However, this exclusion is subject to another reasonable interpretation. As York points out in its brief in opposition to the summary judgment motion, the policy could be read to cover damages occurring and accruing from the loss of use after the nipple housings or regulator housings were put into the final fully assembled product, but not the replacement of the parts. Read this way, the policy would appear to cover the damages claimed by Val minus the cost of replacement housings. As there are at least two reasonable interpretations of this provision, it is ambiguous. Therefore, it must be construed against the insurer, CIC, and in favor of the insured, York.

CIC also relies on *Nationwide Mutual Insurance Company v. C.S. International Inc.,* 562 F.3d 591 (3d Cir. 2009) to support its motion for summary judgment. In that case, the court would not provide coverage for a claim based on faulty workmanship and because a breach of contract does not constitute an occurrence. In *Nationwide,* the insured provided defective chondroitin that was deficient, of an improper composition and unusable for

its intended purpose. The purchaser of the chondroitin mixed it with another compound making it into a nutritional tablet. The product in that ease was unusable because of its own characteristics. There was no sudden occurrence. In the present ease, however, the nipple housings and regulator housings suddenly cracked after the finished product was in use by customers. Further, it has not been determined whether using a specific type of resin was a material term of the contract between Val and York. Therefore, relying on *Nationwide* to grant the motion for summary judgment would be improper.

The umbrella policy at issue in this case also provides coverage. Just as in the commercial general liability policy, the umbrella policy requires an "occurrence" before coverage is applied. As discussed above, the court finds the "occurrence" was the sudden and unexpected cracking of the final products in this case. The exclusions that CIC again attempts to rely on under the umbrella policy do not apply in this case for the same reasons stated previously in this opinion that the exclusions did not apply under the general liability policy.

Lastly, CIC also seeks to escape its duty to defend and indemnify Technical in its summary judgment motion. However, the terms and conditions in the purchase order/invoice documents exchanged between York and Technical constitute an "insured contract" as defined by the commercial general liability policy and the umbrella policy. CIC admitted that is was in fact an "insured contract" at the summary judgment motion hearing. Under the terms of both of the policies, coverage is provided for "insured contracts." Therefore, CIC has a duty not only to defend and indemnify York, but also Technical in the underlying action.

## ORDER

And now, July 19, 2010, upon consideration of plaintiff Cincinnati Insurance Company's motion for summary judgment, it is hereby ordered that summary judgment is denied.