J-A06013-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JOHN R. BLACKBURN III | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| KING INVESTMENT GROUP, LLC | |
| | No. 2409 EDA 2016 |

Appeal from the Judgment Entered June 28, 2016
In the Court of Common Pleas of Chester County
Civil Division at No(s): No. 2015-01295-CT

BEFORE:  PANELLA, J., SHOGAN, J., and RANSOM, J.

MEMORANDUM BY PANELLA, J.                     **FILED JULY 06, 2017**

Appellant, John R. Blackburn III,[1] appeals from the judgment[2] entered

following a June 28, 2016 order, which modified the amount of a judgment

_____

[1] The caption in the notice of appeal listed John R. Blackburn III and Donanne M. Blackburn as Appellants and King Investment Group, LLC, Peter Papadopoulos, Hristos Papadopoulos, and Anita Papadopoulos as Appellees. **See** Notice of Appeal, 7/27/16. However, only John R. Blackburn III and King Investment Group, LLC appear to be parties to the instant appeal. **See** Appellant's Brief; Appellee's Brief; Order, 6/28/16. We have corrected the caption accordingly.

[2] Appellant purports to appeal from the order entered June 28, 2016, which partially granted Appellant's post-trial motion by modifying the verdict in favor of Appellee, King Investment Group, LLC, from $147,735 to $132,935, while denying the rest of the relief requested in his post-trial motion. **See** Notice of Appeal, 7/27/16. "Orders denying post-trial motions, however, are not appealable. Rather, it is the subsequent judgment that is the appealable order when a trial has occurred." **Harvey v. Rouse Chamberlin, Ltd**., 901 A.2d 523, 524 n.1 (Pa. Super. 2006) (citation omitted). Here, the June 28,

*(Footnote Continued Next Page)*

in favor of Appellee, King Investment Group, LLC, from $147,735 to $132,935. Appellant contends that the trial court erred in its interpretation of the contract, improperly precluded expert testimony, and erred in its calculation of damages recoverable by Appellee. We affirm.

The factual basis of this litigation is largely undisputed. On February 18, 2011, Appellant entered into a written agreement (the "Agreement") to convey property located at 19-19½ King Street, Malvern, Chester County, to Appellee for $625,000.[3] The property consisted of two commercial buildings, one of which contained a pizza shop owned by the members of Appellee. Following execution of the Agreement, but prior to settlement, the parties

_(Footnote Continued)_ ───────────────

2016 order directed that the judgment for $132,935 be entered on the docket. **_See_** Docket Entry #27, 6/28/16.

 "[W]here a trial court denied a party's post-trial motions _and_ unequivocally enters judgment in the same order, that order is immediately appealable and an appeal should be filed within thirty days of its entry on the trial court docket." **_Taxin v. Shoemaker_**, 799 A.2d 859, 860 (Pa. Super. 2002) (footnote omitted). Thus, this appeal correctly lies from the entry of judgment, entered by the order, rather than the order itself. However, despite his error, this Court will address the appeal because judgment has been entered on the verdict. **_See Mount Olivet Tabernacle Church v. Edwin L. Wiegand Division_**, 781 A.2d 1263, 1266 n.3 (Pa. Super. 2001). We have corrected the caption accordingly.

[3] As part of the Agreement, Appellant granted Appellee a $125,000 purchase money loan pursuant to the terms of a judgment note. In December 2015, Appellant commenced a separate action, successfully confessing a judgment of $145,347.12, later modified to $143,347.12, against Appellee for defaulting on the note. **_See_** Trial Court Order, 3/28/16, at docket no. 2015-11212-JD. Appellee appealed this judgment. However, a panel quashed the appeal as untimely. **_See Blackburn v. King Investment Grp_**., **_LLC_**, \_\_\_\_ A.3d \_\_\_\_, 2017 WL 1246700 (Pa. Super., filed April 5, 2017).

completed several written addendums to the Agreement. In relevant parts, the addendums provided that Appellant would: (1) continue to occupy the rear commercial premises for $1,000 a month, payable to Appellee, until December 31, 2011; (2) install two American Disabilities Act compliant bathrooms; (3) install new heating and air conditioning units on the first and second floor of the property; (4) replace the plumbing in the addition to the main building; and (5) replace a broken hot water heater. *See* Addendum, 2/18/11, at ¶ 43; Third Addendum, 5/9/11, at ¶ 52(A)-(E); Fourth Addendum, 5/19/11, at ¶ 55(A). All of these renovations were to be undertaken at Appellant's sole cost and expense, and with the exception of the ninety-day period for replacing the hot water heater, were to be completed within two years of the settlement date. *See id*. In May 2011, the parties settled and Appellant conveyed the property to Appellee.

Subsequently, Appellant breached his obligation to pay rent and complete the agreed to renovations. Thus, in February 2015, Appellee filed a complaint against Appellant and his wife, Donanne M. Blackburn, asserting (1) breach of contract of the written agreement of sale; (2) breach of contract for unpaid rent; (3) fraud; (4) negligent misrepresentation; (5) violations of Pennsylvania's Uniform Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq., and (6) unjust enrichment. Upon Appellant's preliminary objections filing, the trial court dismissed counts (3)

through (6) against all parties, and counts (1) and (2) against Appellant's wife.

On March 17, 2016, the trial court held a non-jury trial on the remaining breach of contract claims against Appellant. Appellee presented a fact witness, Jerry O'Connor, to testify in relation to a construction proposal he completed for the property in 2013. O'Connor, a general contractor, testified that he estimated the value of the renovations based upon blueprints submitted to him by Appellee. The proposal included estimates for the complete demolition of two existing bathrooms, the construction of two new bathrooms, the installation of an acoustic ceiling grid, two Bryant gas furnaces and condensers, plumbing, ductwork registers and grills, and seven day programmable thermostats. O'Connor's proposal did not differentiate between the costs of completing each line item, but generally concluded that the total cost of completion to be $114,935. O'Connor testified this rate would increase $6,500 in labor costs if the work were performed as of the date of trial.

Appellee also submitted into evidence invoices from Airtek Heating and Air Conditioning, Inc., relating to the installation of heating pumps. The invoices indicated that it would cost $7,500 for installation of two-ton Goodman GMC Heat pumps with two-ton air handler units and $850 for the installation of a new Bradford water heater.

Appellant testified on his own behalf. Appellant admitted he failed to pay rent pursuant the addendum to the Agreement. And he agreed with Appellee that he owed $18,000 as a result. Further, Appellant admitted that he breached the Agreement by failing to complete any of the contracted renovations to the property. However, Appellant contested the scope and cost of the work O'Connor's proposal included.

To contest O'Connor's proposal, Appellant presented his own proposal estimating the costs of labor and materials for the renovations. Appellant's proposal estimated that it would cost $3,200 to renovate the bathrooms, $14,900 to replace the heating and cooling system, $7,840 to replace the heating and cooling system on the second floor, and $570 to replace the hot water heater. Appellant offered no evidence as to the cost to replace the plumbing in the attached addition. Appellant also intended to present the testimony of Stephen Tait, a general contractor, to opine as to the renovations Appellant was obligated to complete under the Agreement. Ultimately, the trial court precluded Tait's opinion testimony, following Appellee's objection to Appellant's failure to disclose Tait's expert status prior to trial.

Following the conclusion of testimony, the trial court entered a verdict in favor of Appellee and against Appellant for $139,435—$121,435 for failure to make the repairs mandated under the Agreement, and $18,000 for unpaid rent pursuant to the Agreement. In support of its verdict, the trial court

determined that the Agreement was clear and unambiguous, and thus, reasoned that Appellant's admitted failure to make the repairs in the Agreement required him to pay the credible damages as set forth by O'Connor.

Appellee filed a motion to include pre-judgment interest in the verdict. Appellant did not respond. The trial court corrected the verdict to $147,785. Subsequently, Appellant filed a post-trial motion disputing: (1) the trial court's grant of Appellee's post-trial motion; (2) the trial court's interpretation of the Agreement; (3) acceptance of Appellee's witness's estimate of total damages; and (4) the trial court's exclusion of the expert testimony of Tait. The trial court granted Appellant's motion in part by modifying the verdict from $147,785 to $132,935. However, the trial court denied Appellant's claims that it erred by accepting Appellee's damage estimate or by excluding Tait's expert testimony. This appeal follows.

We apply the following standard of review to a nonjury trial verdict:

> Our appellate role in cases arising from nonjury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of the jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue … concerns a question of law, our scope of review is plenary.
>
> The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court

because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

***Allegheny Energy Supply Co., LLC v. Wolf Run Min. Co.***, 53 A.3d 53, 60-61 (Pa. Super. 2012) (citation and quotation marks omitted; brackets and ellipses in original). Furthermore, the trial court, as the finder of fact, is free to believe "all, part[,] or none of the evidence presented." ***Ruthrauff, Inc. v. Ravin, Inc***., 914 A.2d 880, 888 (Pa. Super. 2006) (citation omitted). "Issues of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determinations or substitute our judgment for that of the factfinder." ***Id***. (citation and internal quotation marks omitted).

In his first issue, Appellant contends that the trial court erred by determining that the damages caused by his breach of the Agreement amounted to $139,435. ***See*** Appellant's Brief, at 4. His claim is two-fold. The first aspect of Appellant's argument concerns the trial court's interpretation of the parties' Agreement. ***See id***., at 10-26. The second challenges the trial court's calculation of damages based upon its allegedly incorrect interpretation of the contract term and scope of renovations. ***See id***.

First, Appellant contends that the trial court incorrectly interpreted paragraph 52 of the third addendum to the Agreement. ***See*** Appellant's Brief, at 10. Contract interpretation is a question of law; therefore, this Court is not bound by the trial court's interpretation. ***See Kraisinger v.***

*Kraisinger*, 928 A.2d 333, 339 (Pa. Super. 2007). "In construing a contract, the intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." *Charles D. Stein Revocable Trust v. General Felt Industries, Inc.*, 749 A.2d 978, 980 (Pa. Super. 2000).

> In determining the intent of the parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language of the contract was chosen carelessly.
>
> When interpreting agreements containing clear and unambiguous terms, we need only examine the writing itself to give effect to the parties' intent. The language of a contract is unambiguous if we can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends. When terms in a contract are not defined, we must construe the words in accordance with their natural, plain, and ordinary meaning. As the parties have the right to make their own contract, we will not modify the plain meaning of the words under the guise of interpretation or give the language a construction in conflict with the accepting meaning of the language used.
>
> On the contrary, the terms of a contract are ambiguous if the terms are reasonably or fairly susceptible of different constructions and are capable of being understood in more than one sense. Additionally, we will determine that the language is ambiguous if the language is obscure in meaning through indefiniteness of expression or has a double meaning. Where the language of the contract is ambiguous, the provision is to be construed against the drafter.

*In re Jerome Markowitz Trust*, 71 A.3d 289, 301 (Pa. Super. 2013) (citation omitted).

At issue, is the phrase "renovate and otherwise install" as used in the provision in the third addendum addressing the renovations to bathrooms within the property. The provision provides:

> (A) [Appellant] and [Appellee] hereby expressly agree that [Appellant] shall *renovate and otherwise install* two (2) handicap bathrooms, both of which are compliant with the Americans with Disabilities Act [("ADA")] within two (2) years from the anniversary date of settlement, at [Appellant's] sole cost and expense.

Third Addendum, 5/9/11, at ¶ 52(A) (emphasis added).

Appellant argues that the phrase "renovate and otherwise install" in section paragraph 52(A) of the third addendum to the Agreement was ambiguous as to whether it required Appellant to demolish and completely rebuild the bathrooms or to simply bring them into compliance with ADA standards. **See** Appellant's Brief, at 10. Appellant alleges that the addendum contains an ambiguous term, "renovate," which should be construed in his favor. **See id**. Conversely, the trial court and Appellee contend that the term "renovate" is clear and unambiguous, and as such, the scope of work to be completed is clearly defined through the addendums and consistent with the complete remodel present in O'Connor's proposal. **See** Rule 1925(a) Statement, 9/19/16, at 3-4; Appellee's Brief, at 12.

Here, we agree with the trial court's finding that the phrase "renovate and otherwise install" as used in the third addendum to the Agreement is clear and unambiguous. Appellees clearly understood the term "renovate" to connote demolition and complete replacement, as evidenced by the

blueprints relied upon by O'Connor in preparing his estimate. This understanding is supported by the rest of the provisions in the addendum. They indicate that the parties intended for Appellant to undertake a major renovation to the property, rather than just making small repairs. Further, while Appellant claims that he understood the term "renovate and otherwise install" to connote altering the bathrooms to bring them into compliance with the ADA, the trial court found Appellant's testimony to be incredible. *See* Trial Court Opinion, 6/28/16, at 8. As an appellate court, we will not challenge a trial court's credibility determinations. Thus, we find no error in the trial court's determination that the Agreement language was unambiguous and required a complete remodel of the bathrooms.

The second aspect of Appellant's first issue challenges the trial court's calculation of damages based upon the alleged incorrect interpretation of the contract and scope of the work to be completed. *See* Appellant's Brief, at 10. As discussed above, we do not find that the trial court incorrectly interpreted the contract or the scope of work to be completed. Thus, we are left with Appellant's challenge to the calculation of damages.

> Where one party to a contract without any legal justification, breached the contract, the other party is entitled to recover, unless the contract provided otherwise, whatever damages he suffered, provided (1) that they were such as would naturally and ordinarily result from the breach, or (2) they were reasonably foreseeable and within the contemplation of the parties at the time they made the contract, and (3) they can be proved with reasonable certainty.

*Ferrer v. Trustees of the University of Pennsylvania*, 825 A.2d 591, 610 (Pa. 2002) (citation and quotation marks omitted). The purpose of the damage award is to place the non-breaching party "as nearly as possible in the same position [it] would have occupied had there been no breach." *Lambert v. Durallium Products Corp.*, 72 A.2d 66, 67 (Pa. 1950) (citations omitted). Further,

> [t]he determination of damages is a factual question to be decided by the fact-finder. The fact-finder must assess the testimony, by weighing the evidence and determining its credibility, and by accepting or rejecting the estimates of damages given by the witnesses.
>
> Although the fact-finder may not render a verdict based on sheer conjecture or guesswork, it may use a measure of speculation in estimating damages. The fact-finder may make a just and reasonable estimate of the damage based on relevant data, and in such circumstances may act on probable, inferential, as well as direct and positive proof.

*Omicron Systems, Inc. v. Weiner*, 860 A.2d 554, 564-565 (Pa. Super. 2004) (citation omitted).

Here, Appellant admits that he did not complete any of the contracted renovations set forth in the Agreement. *See* Appellant's Brief, at 10. To justify the amount of damages awarded, the trial court outlined the credible evidence set forth at the hearing and determined that Appellees proved that they sustained $132,935 in damages. *See* Trial Court Opinion, 6/28/16, at 7; Rule 1925(a) Opinion, 9/19/16, at 3-6. This amount was supported by the record, as evidenced by O'Connor's testimony and written proposal. Thus, Appellant is essentially challenging the weight the trial court gave to

O'Connor's testimony. As an appellate court, we will not reweigh the evidence. Therefore, because the damage amount was supported by the record, we affirm the award of damages.

In his final issue, Appellant contends that the trial court erred by prohibiting his fact witness, Tait, from testifying as an expert witness. **See** Appellant's Brief, at 8, 27. Appellant contends that Appellee's failure to pursue the identification of expert witnesses pursuant to Pa.R.C.P. 4003.5 through discovery, prior to trial, precludes the trial court's prohibition of Tait status as an expert witness. **See id**., at 30.

"[T]he standard for qualification of an expert witness is a liberal one. When determining whether a witness is qualified as an expert the court is to examine whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation." **Callahan v. Nat'l R.R. Passenger Corp**., 979 A.2d 866, 875-876 (Pa. Super. 2006) (citation omitted). If a trial court determines that a witness may testify as an expert,

> he may testify and the weight to be given to such testimony is for the trier of fact to determine. It is also well established that a witness may be qualified to render an expert opinion based on training and experience. Formal education on the subject matter of the testimony is not required…. It is not a necessary prerequisite that the expert be possessed of all of the knowledge in a given field, only that he possess more knowledge than is otherwise within the ordinary range of training, knowledge, intelligence or experience.

- 12 -

***Miller v. Brass Rail Tavern, Inc.***, 664 A.2d 525, 528 (Pa. 1995) (citations omitted). However, when considering the admission of expert evidence, our standard of review is very narrow:

> The admission or exclusion of evidence, including the admission of testimony from an expert witness, is within the sound discretion of the trial court. … [W]e may only reverse upon a showing that the trial court clearly abused its discretion or committed an error of law. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

***Turney Media Fuel, Inc., v. Toll Bros., Inc***., 725 A.2d 836, 839 (Pa. Super. 1999) (internal citations omitted); ***see also*** Pa.R.E. 702 *Comment*.

Here, the trial court explained its decision to prohibit Tait from testifying as an expert witness as follows:

> At trial, Appellee's counsel indicated that he had requested, through discovery, that Appellant produce the documents intended to be introduced at trial. Because [] Tait did not prepare an expert report, as is customary, Appellant was able to avoid identification of [] Tait as an expert. I determined that this caused Appellee unfair surprise.
>
> Moreover, the decision to preclude [] Tait from testifying as an expert was also grounded in his qualifications. The qualification of an expert witness rests within the sound discretion of the trial judge. [] Tait identified himself as a general contractor with 42 years of experience. Without the benefit of a curriculum vitae offered as evidence or any further elaboration on his experience, this is the extent of [] Tait's qualifications. Further it was established that [] Tait's testimony was based on a limited review of the relevant contract provisions, [O']Connor's estimate, and the testimony at trial. In my discretion, I determined that [] Tait was simply not qualified to offer expert opinions as to the value of the work that was contemplated under the contract or criticism of [O']Connor's estimate.

Having determined that [] Tait was not identified prior to trial, had produced no report or curriculum vitae, and limited qualifications, I found that the prejudice to Appellee was too great to allow him to offer any opinions as an expert witness. Instead, he was permitted to testify as a fact witness on behalf of Appellant.

Rule 1925(a) Opinion, 9/19/16, at 7-8 (citation omitted).

While Appellant is correct in noting that Appellee did not request the identification of expert witnesses pursuant to Pa.R.C.P. 4003.5, this does not lead to the automatic conclusion that the trial court should have allowed Tait to testify as a witness. The trial court, as it explained above, found a number of reasons, including a lack of curriculum vitae, Appellant's attempt to game the discovery process, and limited qualifications, to explain why Tait could not be confirmed as an expert witness. We find no error of law in the trial court's reasoning for excluding this witness's expert testimony. Thus, as we find no error of law or abuse of discretion, Appellant's second issue on appeal is without merit.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/6/2017

- 14 -