J-A20015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| LAURIE A. JOSEPH | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JOHN B. O'LAUGHLIN | |
| Appellant | No. 1706 WDA 2015 |

Appeal from the Order September 30, 2015
In the Court of Common Pleas of Fayette County
Civil Division at No(s): 1691 of 2015 G.D.

BEFORE:  BOWES, STABILE AND MUSMANNO, JJ.

**FILED AUGUST 22, 2017**

CONCURRING AND DISSENTING MEMORANDUM BY BOWES, J.:

The learned majority misapplied the restrictive covenant by extending it to organizational measures related to the future operation of a veterinary clinic after the covenant expires.  As I do not agree that Appellant's preparations are tantamount to competition in violation of the covenant not to compete, I respectfully dissent from that aspect of the memorandum.

The majority accurately outlined the relevant facts, procedural history, and the applicable standard of review.  Similarly, it cogently explained Appellee's burden of establishing the three components of a permanent injunction:  (1) clear right to relief; (2) necessary to avoid an injury that cannot be compensated by damages; and (3) greater injury will result from

refusing rather than granting the relief requested. ***Kuznik v. Westmoreland County Bd. of Comm'rs***, 902 A.2d 476, 489 (Pa. 2006).

I agree with the majority's analysis regarding the trial court's improper reliance upon ***Atkinson & Mullen Travel, Inc., et al. v. O'Brien, et al***, 2944 EDA 2012 (unpublished memorandum, filed May 5, 2014) as authoritative precedent. Likewise, I join the well-reasoned discussion affirming the trial court's imposition of a permanent injunction relating to Appellant's use of social media. In my view, any and all communications with the public relating to veterinary services equates to soliciting clients and therefore is a clear violation of the asset transfer agreement.

I write separately because, unlike my learned colleagues, I believe that the asset transfer agreement does not bar Appellant's preparatory measures and that, by creating that requirement on Appellee's behalf, the majority deprived Appellant of the benefit of his bargain. Plainly, the majority and I have a contrasting view of what constitutes a business or practice that is in "competition" with Appellee. While we agree that the defendant's Facebook page violates the restrictive covenant, we view the remaining activities in divergent lights. Unlike my colleagues, I believe that the contract permits Appellant to mobilize his resources for immediate competition once the restrictive covenant expires. In my view, Appellant's nonpublic preparatory measures fall short of competition.

As contract interpretation is a question of law, we are not bound by the trial court's construction of the writing. *See Kraisinger v. Kraisinger*, 928 A.2d 333, 339 (Pa.Super. 2007). We have explained the relevant principles as follows: "In construing a contract, the intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." *Charles D. Stein Revocable Trust v. General Felt Industries, Inc.*, 749 A.2d 978, 980 (Pa.Super. 2000). As we explained in *In re Jerome Markowitz Trust*, 71 A.3d 289, 301 (Pa.Super. 2013),

> In determining the intent of the parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language of the contract was chosen carelessly.
>
> When interpreting agreements containing clear and unambiguous terms, we need only examine the writing itself to give effect to the parties' intent. The language of a contract is unambiguous if we can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends. When terms in a contract are not defined, we must construe the words in accordance with their natural, plain, and ordinary meaning. As the parties have the right to make their own contract, we will not modify the plain meaning of the words under the guise of interpretation or give the language a construction in conflict with the accepting meaning of the language used.

*Id*. (citation omitted).

The instant restrictive covenant prohibited Appellant from engaging in the practice of veterinary medicine for five years within a fifty-mile radius of Appellee's clinic. The pertinent clause provided as follows:

> Seller acknowledges and agrees that he will not be involved in any of the following activities at any location within fifty (50) miles of the veterinary clinic ("Geographic Area"). Seller covenants and agrees that for a period of five (5) years following the execution of this Agreement, he shall not directly or indirectly, as an employer, employee, principal, agent, consultant, partner, stockholder, creditor or in any other capacity, engage or participate in any business or practice within the Geographic Area that is in competition in any manner whatsoever with the Buyer. Further, Seller shall not contact, solicit, or engage in any activity to contact or solicit, indirectly or directly, any client, past, present, or future, during that five (5) year period.

Asset Transfer Agreement, 12/24/14, ¶ 3 (at unnumbered page 3).

The majority reads the proviso as a broad prohibition that equates preparatory measures as competition. However, that is not the parties' agreement. In reality, the provision is refined and reasoned. "[Appellant] shall not directly or indirectly . . . engage or participate in any business or practice within the Geographic Area that is in competition in any manner whatsoever with [Appellee]." *Id*. Thus, at a minimum, to establish a violation of the clause, Appellee was required to demonstrate that Appellant participated in a business or practice that was in competition with her veterinary clinic. The majority construed the accord as precluding organizational measures and concluded that Appellee satisfied her evidentiary burden by introducing evidence that Appellant incorporated a

business, purchased equipment, acquired land, and sought a zoning variance to operate a clinic in the future. Similarly, the trial court inferred from Appellant's actions that Appellant was preparing to violate the agreement before its expiration. In my view, both the majority's broad interpretation of the restrictive convent and the trial court's supposition run contrary to the ensconced principle of contract interpretation that courts should avoid reading clauses into the agreement terms that do not exist. ***See In re Jerome Markowitz Trust***, ***supra***, at 301 ("we need only examine the writing itself to give effect to the parties' intent.").

Under the majority's far-reaching perspective of "competition," Appellant is precluded from engaging in **any** preparatory activity for the entire five-year period. That view gives Appellee the benefit of the additional time that it would take Appellant to launch his veterinary practice once the covenant expires. Applying the suggested reasoning, the effective term of the five-year covenant necessarily would exceed the parties' stated intent without compensating Appellant for the additional impairment. From my perspective, the majority's suggestion that Appellant is not entitled to make preparations before opening a practice after December 24, 2019 is untenable.

Although the majority frames its discussion in reference to cases that address non-compete clauses included in employment contracts, the case at bar involves an interpretation of the restrictive covenant that the parties

negotiated as part of the asset transfer agreement. In *Morgan's Home Equipment Corp. v. Marticci*, 136 A.2d 838, 846 (Pa. 1957), our High Court explained that different reasons motivate covenants not to compete attendant to employment and those dependent upon the sale of a business. As to the former type of non-compete clauses, the Court explained that they are "enforced by the courts as reasonably necessary for the protection of the employer." *Id*.

In contrast to covenants not to compete in employment contracts, restrictive covenants included in agreements for the sale of an established business are intended to temporarily limit a seller's competition with a purchaser in order for the purchaser to establish its own cliental. The Court elucidated this point as follows:

> General covenants not to compete which are ancillary to the sale of a business serve a useful economic function; they protect the asset known as 'good will' which the purchaser has bought. Indeed, in many businesses it is the name, reputation for service, reliability, and the trade secrets of the seller rather than the physical assets which constitute the inducements for a sale. Were the seller free to re-enter the market, the buyer would be left holding the proverbial empty poke.

*Id*. Hence, consistent with our Supreme Court's perspective, I would review the restrictive covenant in the present case with an eye toward ensuring that both sides to the asset transfer agreement obtain the benefit of their bargain.

Unlike the non-compete clauses in employment contracts that the majority references in its analysis, where, as here, the parties to an agreement stand on equal footing, courts simply ensure that both sides get the deal they negotiated. Instantly, Appellee paid $17,973.50 for Appellant's promise to forego competition with her in any manner whatsoever. While Appellant had a contractual duty to avoid competition with the Grace Veterinary Clinic, nothing in the sales agreement imposed the correlate duty to refrain from getting ready to compete once the restrictive covenant expired on December 24, 2019. Although Appellee was free to negotiate for the inclusion of preliminary and preparatory activities in the non-compete, presumably for an increased premium, she neglected to include such a clause, and this Court should be opposed to fashioning one for her benefit. Thus, unless or until Appellant engages in an activity that is tantamount to competition, whether direct or indirect, in my view, he is not in violation of the accord.

Appellant neither practiced veterinary medicine within the geographic area nor engaged or participated directly or indirectly, in any business in competition with Appellee's practice. To the contrary, in anticipation of opening a veterinary practice at some unknown future point, Appellant formed a limited liability company styled, "O' Laughlin Veterinary Services," acquired medical equipment, purchased real estate, and applied for a special use zoning exception that would permit him to build and use a facility as a

veterinary clinic. None of the foregoing actions can be convincingly argued to equate with competition with Appellee's veterinary clinic. Plainly, Appellant, who continued to practice veterinary medicine outside the territorial scope of the covenant, did not operate a veterinary clinic in contravention of the agreement.[1] He did not conduct examinations, treat animals, or provide any other veterinary services. At most, the evidence revealed Appellant's intention to operate a clinic on the site in the future. However, that does not render Appellant's actions to be in present competition with Appellee.

I find instructive the Ohio Court of Appeals discussion in ***Berardi's Fresh Roast***, ***Inc. v. PMD Enter.***, ***Inc.*** 2008 WL 4681825, 2008 Ohio App. Lexis 4618 (Ohio Ct. App. 2008), wherein the appeals court examined whether an appellee's actions violated the terms of a restrictive covenant negotiated as part of an agreement for the sale of a coffee roasting business. The court determined that the appellee did not violate the restrictive covenant when he organized a new coffee roasting enterprise, investigated finance options, leased warehouse space, hired employees, and ordered equipment and supplies prior to the expiration of the noncompetition agreement. Significantly, the appellee made all of the

---

[1] Appellant testified that, after leaving Pennsylvania, he practiced at a clinic in Florida until July 2015. N.T., 9/24/15, at 88.

preparations in anticipation of operating the business immediately after the restriction expired. In concluding that the agreement was not violated, the court observed that the appellee's actions "constituted 'preparations' to compete" rather than actual competition insofar as the appellee never engaged in actual competition until after the the noncompetition agreement expired. *Id*. at *5. In short, the court reasoned, "preparing to compete does not equate to actively competing." *Id*. I would apply the identical reasoning herein to find that Appellant's preparatory measures did not breach the asset transfer agreement.

The majority discounts the appeals court's holding in **Berardi's Fresh Roast**, **Inc.** because that decision did not reveal the precise terms of the restrictive covenant that was under review. However, this attempt to bypass the appeals court's cogent reasoning misses the mark. It is obvious from the Ohio court's opinion that the non-compete clause at the center of the dispute prohibited "competition" and did not specifically exclude "preparations"—if the covenant had precluded preparations than the case would have been a nonstarter. Furthermore, whether the prohibition related to an identified industry, *e.g.*, coffee roasting, or included any competing business or practice whatsoever is of no moment. The crux of the Ohio Court of Appeals' legal rationale, which the majority is determined to avoid, is that preparations do not equate to competition. *Id*. at *5 (preparing to compete is not equivalent to competing.). As the pertinent holding

*Berardi's Fresh Roast*, *Inc.* was not dependent upon the specific language in the restrictive convent, I would apply that holding herein as persuasive legal authority in Appellant's favor.

Moreover, I observe that there was no evidence in the certified record to support the conclusion that Appellant's organizational measures caused Appellee harm. Indeed, Appellant's preparations existed in chorus with Appellee's continued operation of Grace Veterinary Clinic without violating the non-compete clause. Accordingly, I believe that the trial court erred in finding that the above-cited examples of Appellant's anticipated opening of the O'Laughlin Veterinary Services within the territorial scope of the covenant evinced Appellant's intention to initiate competition prior to the date that the agreement expires on December 24, 2019. To the contrary, I would find that Appellant's measures did not breach the non-competition provisions contained in the sales agreements, and therefore, the trial court erred in concluding that Appellant established a clear right to injunctive relief based upon those actions.

Finally, I note that, in contrast with my colleagues, I am not persuaded by the the trial court's supposition that Appellant was preparing to violate the non-compete agreement. First, the trial court's theories do not warrant the deference reserved for factual findings and credibility determinations. Since the facts regarding Appellant's actions were unchallenged, that evidence is not subject to a credibility determination. In

reality, the trial court's purported finding was, in fact, a legal conclusion drawn from the defendant's preparations as well as his creation of the Facebook page. It is beyond peradventure that we are not bound by the trial court's deductions or inferences drawn from the facts. *A.V. v. S.T.*, 87 A.3d 818 (Pa.Super. 2014) (appellate court is not bound by deductions or inferences made by trial court from its findings of fact). Thus, the court's belief that Appellant was preparing to violate the non-compete agreement is not entitled to the heighten deference typically associated with its role as the ultimate arbiter of facts. Moreover, whether characterized as inference, finding of fact, or legal conclusion, the trial court's anticipation of a violation is not supported by the certified record.

Instantly, aside from the Facebook page, none of the remaining activities in which Appellant engaged, *i.e.*, incorporating a business, purchasing equipment, acquiring land, and seeking a zoning variance, announced a practice to the public or entailed the participation of a business or practice in competition with Appellee's clinic.[2] To the contrary, the evidence in this case demonstrated that the preponderance of Appellant's actions were preparatory.

---

[2] I recognize that the zoning form that the defendant submitted to the review board indicated that the intended use of his property was for a "veterinary clinic," however, I do not think that a required entry on a form equates with a public announcement.

For all of the foregoing reasons, I would affirm the order granting the permanent injunction insofar as it prohibited Appellant from operating a veterinary clinic in contravention of the restrictive covenant contained in the asset transfer agreement, including the solicitation of former clients, whether directly or indirectly, by advertisement or social media. However, I would reverse the order granting a permanent injunction to the extent that it purported to enjoin Appellant from engaging in organizational activities.